Michael Lee Bumguardner v. The State of Texas
















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-036-CR

     MICHAEL LEE BUMGUARDNER,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 
 
From the 54th District Court
McLennan County, Texas
Trial Court # 95-784-C
                                                                                                                 
 
O P I N I O N
                                                                                                                       A jury convicted Michael Lee Bumguardner of the offense of murder and assessed punishment
at twenty three years’ confinement. See Tex. Pen. Code Ann. § 19.02 (Vernon 1994). 
      In his first point of error, Bumguardner alleges that the evidence is factually insufficient to
establish beyond a reasonable doubt that he did not shoot the victim in self-defense. The second
point of error asserts that the court erred in submitting a jury instruction which limited his right of
self-defense. Point of error three alleges that the jury determined his sentence by lot. The fourth
point of error asserts that the evidence is factually sufficient to prove that he acted in the heat of
sudden passion.
FACTUAL BACKGROUND
      Bumguardner shot James “Scooter” Hinton on September 29, 1995 at approximately 11:30 PM
in the parking lot of the Continental Cowboy. Testimony revealed that Hinton had been seeing
Bumguardner’s wife, Sheila. Earlier in the day, Bumguardner and his friend, James Morgan, saw
Sheila, Hinton, “Ty” Summey, and Steven Harper entering a convenience store in McGregor. 
Morgan pulled his truck into the parking lot, and Bumguardner went into the store to talk to Sheila. 
Bumguardner and Sheila went outside the store to talk while the three men remained in the store. 
        After arguing with Sheila, Bumguardner got into Morgan’s truck, and they started to leave
when Hinton and Summey walked outside the store. Bumguardner got out of the truck, and the
men began cursing at each other. Hinton removed his cowboy hat and untucked his shirt as if
getting ready for a fight. The store clerk came out and separated the men, and Bumguardner left. 
      That evening, Bumguardner went to the Continental Cowboy looking for Sheila. Not finding
her, he walked toward his truck in the parking lot as Sheila, Hinton, Summey, and Harper were
exiting their vehicle. The men began arguing and cursing. Bumguardner pulled out a gun and
waved it in the air. George Reedy, a bouncer at the Continental Cowboy, intervened and told
Bumguardner to put the gun away. Bumguardner put the gun away, and the men began arguing
again. Hinton swung at Bumguardner but missed and broke the mirror on Bumguardner’s truck. 
Bumguardner got in his truck and began driving toward the exit of the parking lot. According to
witnesses, Bumguardner yelled something at Hinton. Hinton ran towards the truck and
Bumguardner shot him.
      After the shooting, Bumguardner squealed out of the of the parking lot and threw the gun out
of the window. He went to a friend’s house and talked about what he should do. After a few
hours, Bumguardner turned himself in to the authorities.
SELF-DEFENSE
      Bumguardner’s first point of error alleges that the evidence is factually insufficient to prove
beyond a reasonable doubt that he did not shoot Hinton in self-defense. Bumguardner asserts that
testimony established that he feared Hinton from a prior altercation and only shot him after Hinton
ran towards his truck as he was attempting to leave.
      The proper standard for reviewing a jury’s rejection of a defensive theory is the standard
articulated in Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996). See Mata v. State,
939 S.W.2d 719, 724 (Tex. App.—Waco 1997, no pet.). The appellate court must consider
whether the evidence presented demonstrates that the conviction is so “contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.” Clewis, 922 S.W.2d at
134; Mata, 939 S.W.2d at 724. 
      All of the evidence in the record related to the contested issue is considered. Santellan v.
State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). Evidence which tends to prove the issue is
compared with evidence which tends to disprove the issue. Id. We give appropriate deference to
the jury’s decision and do not substitute our judgment for theirs. Clewis, 922 S.W.2d at 135. We
do not set aside the “verdict merely because [we] feel that a different result is more reasonable.” 
Id. (quoting Pool v. Ford Motor Co., 715 S.W.2d 629, 634 (Tex. 1986)).
      The court submitted self-defense in the jury charge. A person is justified in using force against
another when and to the degree he reasonably believes force is immediately necessary to protect
himself against the other person’s use or attempted use of force. Tex. Pen. Code Ann. § 9.31(a)
(Vernon 1994). The use of force is not justified in response to verbal provocation alone or if the
actor provoked the other’s use or attempted use of force. Id. § 9.31(b)(1), (4) (Vernon Supp.
1998). Deadly force may only be used when self-defense is justified under Section 9.31, a
reasonable person would not have retreated, and when deadly force is reasonably necessary to
protect against another’s use or attempted use of deadly force. Id. § 9.32(a)(1)-(3)(A).
      We review the testimony to determine if factually sufficient evidence exists to support the
jury’s verdict that Bumguardner did not act in self-defense. Bumguardner testified that several
weeks before the shooting he encountered Hinton at the Continental Cowboy. A friend of
Bumguardner’s was drunk and causing problems. Hinton came up to them and asked if there were
any problems. Hinton put his boot up on a chair and patting his boot said, “I carry my partner
with me everywhere I go.” Bumguardner testified that he believed Hinton meant that he had a gun
in his boot.
      Bumguardner testified that he saw Hinton reach for his boot during the altercation at the
convenience store. He did not see a gun but stated: “I never seen anything, all I know is he
reached for it, his boot. And its’ [sic] the same boot that he patted two weeks earlier when I met
him and said that he carries his friend -- his partner with him everywhere he goes.” Bumguardner
testified that as they drove away Morgan told him that he had “seen what he believed was a gun
that ‘Scooter’ Hinton pulled from his boot.”
      Morgan also testified that he saw Hinton reach down for his boot and “had something in his
hand.” Morgan stated, “I think it might have been a gun.” He testified that he told Bumguardner
that he had seen a gun.
      Bumguardner argues that this testimony shows that he feared Hinton because he had a gun in
his boot earlier in the day at the convenience store. However, other witnesses testified that they
did not see a gun at the convenience store. Summey and Harper testified that they did not see
Hinton pull a gun at the convenience store. Jennifer Moore, the store clerk, testified that she did
not see Hinton reach for his boot. The store videotape showed Hinton with a cigarette in his hand
and Morgan said that it could have been a package of cigarettes that he saw in Hinton’s hands. 
Further, Morgan testified that Bumguardner did not say that he also saw Hinton pull a gun at the
time Morgan mentioned it.
      Witnesses testified that Bumguardner waved a gun in the air in the parking lot of the
Continental Cowboy. No one testified that they saw Hinton pull a gun. The investigating officer
testified that he did not find a gun in Hinton’s possessions. However, Bumguardner testified that
Hinton pulled his pants leg up and said he had a gun also.
      Summey and Reedy testified that as Bumguardner was driving away he yelled something at
Hinton. Hinton then ran towards Bumguardner’s truck. Bumguardner testier that he was not able
to exit the parking lot because of oncoming traffic. Bumguardner testified that he was afraid that
Hinton was going to kill him, and he flinched, and the gun went off.
      Only Bumguardner and his friend, Morgan, testified that Hinton had pulled a gun earlier that
evening at the convenience store. No other witness testified that Hinton had a gun. The jury is the
sole judge of the credibility of the witnesses and weight to be given their testimony. Santellan, 939
S.W.2d at 164. We must give due deference to the jury on these issues. Id. at 166. The jury
could have decided that Hinton did not have a gun and therefore, it was not reasonable for
Bumguardner to believe that he needed to protect himself by the use of deadly force. See Tex.
Pen. Code Ann. § 9.32(a) (Vernon Supp. 1998). Further, the jury could have found that a
reasonable person would have retreated and not provoked the victim by yelling at him. Id.
      Based on this evidence, the jury’s rejection of the self-defense theory was not “so contrary to
the overwhelming weight of the evidence as to be clearly wrong and unjust.” Clewis, 922 S.W.2d
at 134. We find that factually sufficient evidence exists to establish beyond a reasonable doubt that
Bumguardner did not shoot Hinton in self-defense. 
      Thus, we overrule the first point of error. 
     JURY INSTRUCTION
      Bumguardner alleges that the court erred in submitting an instruction which limits his right of
self-defense. He says there is no evidence to establish that he armed himself with the intent to seek
a resolution of his differences with Hinton. The jury was instructed that a defendant is not
authorized to use force against another if the defendant sought an explanation from or discussion
with the other person concerning their differences while unlawfully carrying a weapon. Tex. Pen.
Code Ann. § 9.31(b)(5)(A) (Vernon Supp. 1998). 
      After the charge on self-defense, the court instructed the jury:
Our law provides that it is unlawful for a person to intentionally, knowingly, or recklessly
carry a handgun on or about his person, unless he is traveling.
 
While a defendant has the right to seek an explanation from or discussion with another
concerning a difference with the other person, the use of force against another is not
justified if the defendant sought an explanation from or discussion with another concerning
a difference with the other person while the defendant was unlawfully carrying a handgun.
 
Now therefore, if you find and believe from the evidence beyond a reasonable doubt that
the force used by the defendant against James Hinton was at a time when the defendant
was seeking an explanation from James Hinton, but at that time the defendant was
unlawfully carrying a weapon, to-wit: a handgun, you will find against the defendant’s
claim of self-defense. 
 
Therefore, the instruction limits Bumguardner’s right of self-defense. The issue of whether a
court has properly submitted this instruction has not been decided by any Texas court.


 
      The State and Bumguardner suggest that the analysis used in cases involving an instruction on
provoking the difficulty, which also limits a defendant’s right to self-defense, should be employed
in this case. A charge on provoking the difficulty is properly given when: (1) self-defense is an
issue; (2) there are facts in evidence which show that the deceased made the first attack on the
defendant; and (3) the defendant did something intended and calculated to bring on the difficulty
in order to have a pretext for self-defense. Matthews v. State, 708 S.W.2d 835, 837-38 (Tex.
Crim. App. 1986). If there is any evidence raising this issue, an instruction should be submitted. 
Id. at 838.
      We agree that an analysis similar to that employed in an instruction on provoking the difficulty
should be applied to the instruction used in this case. First, was self-defense raised as an issue? 
Second, is there evidence that the defendant sought an explanation from or discussion with the
victim concerning their differences? Third, was the defendant unlawfully carrying a weapon? Self-defense was submitted to the jury. It is undisputed that Bumguardner was unlawfully carrying a
gun. Thus, we must examine the entire record to determine if there is any evidence that
Bumguardner sought an explanation from or discussion with Hinton concerning their differences. 
See id.
      Donna Studer lived with Bumguardner’s brother in the house in front of Bumguardner’s 
apartment. Studer testified that she talked with Bumguardner at 2:00 AM the day of the shooting. 
She said that he was depressed and upset that his wife would not stay at home. She testified that
he said he was going to kill “Scooter.” Studer also testified that Bumguardner admitted that he had
been looking for “Scooter” and Sheila while carrying a gun the night before the shooting.
      Bumguardner told his friend to pull into the convenience store parking lot when he saw Sheila
and the men entering the store. Moore, the store clerk, testified that as Bumguardner was leaving
the store he pointed at Hinton through the glass and yelled, ‘If you want that ugly m-f, you can
have him.” Moore also testified that Bumguardner and Hinton yelled and cursed at each other in
the parking lot. Several other witnesses testified that the two men yelled at each other and almost
got into a fight. This evidence demonstrates that the two men had differences with each other. 
      Bumguardner testified that he packed a gun and went to the Continental Cowboy to look for
Sheila. Reedy, the bouncer at the Continental Cowboy, testified that Bumguardner walked through
the bar and left. As he exited the bar and walked toward his truck, he encountered Hinton,
Summey and Harper. Witnesses testified that Bumguardner was upset and angry and words were
exchanged. Bumguardner demanded to know where his wife was.
      Evidence exists which shows that Bumguardner had differences with Hinton. Bumguardner’s
demand to know where Sheila was and yelling at Hinton tends to show that he sought an
explanation or discussion with Hinton while unlawfully carrying a gun. Therefore, this evidence
raises the issue that Bumguardner sought an explanation from Hinton and the court properly
submitted this instruction to the jury. 
      We overrule the second point of error.
JURY MISCONDUCT
      In his third pont of error, Bumguardner alleges that the jury determined his sentence by lot or
chance because the jury added the sentences the jurors wanted to assess and divided by twelve. 
Bumguardner filed a motion for new trial alleging jury misconduct. Two jurors testified at the
hearing. The jurors testified that they did add up the years and divide by twelve to arrive at the
sentence of 23 years. However, both jurors testified that they did not agree to be bound by the
outcome. The jurors discussed whether 23 years was an adequate punishment. 
      “Absent such an agreement [to be bound by the result of the averaging process], there is no
error in jurors using this device.” Malbrough v. State, 846 S.W.2d 926, 927 (Tex. App.—Houston
[1st Dist.] 1993, pet. ref’d) (quoting Martinez v. State, 496 S.W.2d 612, 613 (Tex. Crim. App.
1973)). Since the jurors in this case did not agree to be bound by the averaging process and
determined that 23 years was an adequate sentence, there is no jury misconduct. Therefore, the
court did not err in overruling Bumguardner’s motion for new trial. 
      We overrule Bumguardner’s third point of error.
SUDDEN PASSION
      Bumguardner’s fourth point of error asserts that the evidence was factually sufficient to prove
that he acted in the heat of sudden passion. A defendant who is convicted of murder can mitigate
his punishment if he proves by a preponderance of the evidence that he “caused the death under the
immediate influence of sudden passion arising from an adequate cause.” Tex. Pen. Code Ann.
§ 19.02(d) (Vernon 1994). Section 19.02(a)(1)-(2) states:
(1) “Adequate cause” means cause that would commonly produce a degree of anger, rage,
resentment, or terror in a person of ordinary temper, sufficient to render the mind
incapable of cool reflection.
 
(2) “Sudden passion” means passion directly caused by and arising out of provocation by
the individual killed or another acting with the person killed which passion arises at the
time of the offense and is not solely the result of former provocation.
 
Id. § 19.02(a)(1)-(2). The jury was instructed on sudden passion and found that Bumguardner did
not act with it.
      The proper standard of review for factual sufficiency when the defendant has the burden of
proof is “whether considering all the evidence relevant to the issue at hand, the judgment is so
against the great weight and preponderance of the evidence so as to be manifestly unjust.” Meraz
v. State, 785 S.W.2d 146, 155 (Tex. Crim. App. 1990). We give appropriate deference to the
jury’s decision and do not substitute our judgment for theirs. Clewis, 922 S.W.2d at 135. The jury
assesses the weight and credibility of the evidence. See Hayes v. State, 728 S.W.2d 804, 809 (Tex.
Crim. App. 1987); Perez v. State, 940 S.W.2d 820, 822 (Tex. App.—Waco 1997, no pet.).
      Bumguardner suggests that the fact that there was an altercation between himself and Hinton
establishes sudden passion. However, Bumguardner withdrew from the altercation and began
driving out of the parking lot when witnesses testified that he resumed the altercation by yelling at
Hinton. Hinton then ran toward the truck and Bumguardner shot him.
      A reasonable jury could have concluded that Bumguardner provoked Hinton, causing him to
run toward the truck. Bumguardner testified during the punishment phase that he could have pulled
the trigger out of anger. During the guilt-innocence stage of the trial, he testified that he flinched
and the gun went off. The jury judges the credibility of the witnesses and could have reasonably
found from this testimony that Bumguardner did not act in the heat of sudden passion.
      From the evidence presented, we cannot say that the “judgment is so against the great weight
and preponderance of the evidence so as to be manifestly unjust.” See Meraz, 785 S.W.2d at 155. 
Therefore, the evidence is factually sufficient to support the jury’s verdict rejecting Bumguardner’s
claim of sudden passion.
      We overrule the fourth point of error.
      We affirm the judgment.
                                                                               REX D. DAVIS 
 Chief Justice
 
Before Chief Justice Davis
       Justice Cummings and
       Justice Vance
Affirmed
Opinion delivered and filed February 18, 1998 
Publish