IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00090-CR

 

Stephen Luis Castillo,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 77th District Court

Limestone County, Texas

Trial Court No. 10582-A

 



MEMORANDUM  Opinion



 








            A Limestone County Grand Jury charged
Stephen Luis Castillo by indictment with the November 15, 2004 murder of Bill
Flippin, Castillo’s father-in-law, by shooting him with a firearm.  At trial,
Castillo’s defense was that the shooting was either an accident or in
self-defense, and the jury was instructed on those matters and on the
lesser-included offense of manslaughter.  The jury found Castillo guilty of
murder and assessed a thirty-year prison sentence.  Asserting seven points of
error (issues), Castillo appeals.  We will affirm.




Jurisdiction

Three issues (points one, two, and five) assert in
essence that the State did not have jurisdiction over Castillo and that his
conviction is thus void.  This argument is based on the assertion that Castillo
is “Autochthonous” (an indigenous native American, or a descendant thereof) and
that the “White” government of Texas has no jurisdiction over him and cannot
prosecute him for murder.  The premise for Castillo’s argument that the State
has no jurisdiction over him is that white immigrants displaced and dispossessed
the Autochthonous and created their own government that excluded the
Autochthonous from constitutional and statutory rights.  In another sense,
Castillo essentially contends that he is the victim of both a racist legal system
and a conspiracy of his in-laws and the Limestone County Sheriff’s Office; as a
result, Castillo has either no or a reduced culpability in the killing of his
father-in-law.  In support, Castillo cites antiquated case law (e.g., Johnson
v. M’Intosh, 21 U.S. (8 Wheat) 543, 5 L.Ed. 681 (1823); Dred Scott v.
Sanford, 60 U.S. (19 How.) 393, 15 L.Ed. 691 (1856); and Elk v. Wilkins,
112 U.S. 94, 5 S.Ct. 41, 28 L.Ed. 643 (1884)), and recounts alleged historical
racism and oppression against the Autochthonous by “Whites.”

            At the time of the offense, Castillo
(who was born in Mississippi and whose parents were born in the United States) was a citizen of the United States and a resident of Limestone County, Texas.  Castillo considered his “race” to be Mexican or Mexican-American.  He was
registered to vote and had voted in Limestone County.  The offense occurred in Limestone County.  The District Court of Limestone County had subject matter jurisdiction
over criminal felony actions and in personam jurisdiction over Castillo, and
venue was proper in Limestone County.  See Tex. Const. art. 5, § 8; Tex.
Pen. Code Ann. § 1.04 (Vernon 2003); Tex.
Gov’t Code Ann. § 24.179 (Vernon 2004); Tex. Code Crim. Proc. Ann. arts. 4.01, 4.05, 13.18 (Vernon
2005).  Castillo cites no controlling authority suggesting otherwise.  We
overrule points one, two, and five.

Sufficiency of the Evidence

            Point three contends that the evidence
is legally and factually insufficient.  When reviewing a challenge to the legal
sufficiency of the evidence to establish the elements of a penal offense, we
must determine whether, after viewing all the evidence in the light most
favorable to the verdict, any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560
(1979).  Our duty is to determine if the finding of the trier of fact is
rational by viewing all of the evidence admitted at trial in the light most
favorable to the verdict.  Adelman v. State, 828 S.W.2d 418, 422 (Tex.
Crim. App. 1992).  In so doing, any inconsistencies in the evidence are
resolved in favor of the verdict.  Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).  If there is a reasonable doubt with respect to the existence of a
defense, the accused must be acquitted.  Tex.
Pen. Code Ann. § 2.03(d) (Vernon 2003); Winkley v. State, 123
S.W.3d 707, 712 (Tex. App.—Austin 2004, no pet.).  In other words, the trier of
fact must find against the defendant on the defensive issue beyond a reasonable
doubt.  See Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

            Castillo was married to Flippin’s
daughter Misty, and they had three children.  They had been living in a home in
 Thornton owned by the Flippins.  Castillo and Flippin had worked at the same
silica plant for over nine years; Flippin had helped Castillo get a job there. 
Misty’s mother Flora routinely kept the Castillo children at the Flippin home
in Kosse.  Misty testified to numerous physical assaults by Castillo, who
admitted to several of them, along with several extramarital affairs.  One of
those affairs led to a family confrontation in 2001 between Castillo and the
Flippins in which Misty’s younger brother hit Castillo in the head with a
baseball bat.  Castillo did not report that assault to law enforcement.

            As matters worsened between Castillo
and the Flippins, in August 2004 the Flippins had a criminal trespass notice as
to their Kosse residence served on Castillo.  This angered Castillo, whose children
were often with the Flippins in Kosse, and he frequently argued with Misty over
it.  Misty testified that Castillo said several times that he was going to kill
Flippin.  On the evening before Flippin’s murder, they argued again about the
trespass notice, and Castillo assaulted Misty, who told him to move out or she
would press charges.  Castillo agreed to move out.

            The next day, Castillo waited on a
road near the silica plant to confront Flippin about the trespass notice as
Flippin was leaving work.  Castillo parked his truck just off the road behind a
curve, and he said that when he saw Flippin’s truck approaching, he pulled his
truck out to block Flippin’s lane to cause him to stop.  Castillo got out of
his truck and, with a pistol in his coat pocket, approached Flippin.  During
the confrontation, Castillo shot twice at Flippin, whose cause of death was a
gunshot wound to the head.  Castillo said that after Flippin had been shot, his
truck accelerated and crashed into Castillo’s truck.  Castillo ran to his truck
and fled in it.  Not long thereafter, Castillo was stopped by police in
Groesbeck, and the murder weapon was found in his truck.

            The State posited the theory that
Castillo intentionally pulled out in front of Flippin to cause a collision between
their trucks and bring about the confrontation.  An investigating officer
opined that Castillo’s truck was moving when it was struck by Flippin’s truck,
and the State pointed to the damage to the two trucks, an otherwise
unexplainable injury on Flippin’s forehead, and Flippin’s foot being found on
the brake pedal as evidence of a collision that contradicted Castillo’s
account.

Considering all of the evidence in the light most
favorable to the verdict, the jury could rationally have found beyond a reasonable
doubt that Castillo committed the offense of murder, rejecting his self-defense
and accident claims.  Jackson, 443 U.S. at 318-319, 99 S.Ct. at 2788-89;
Zuliani v. State, 97 S.W.3d 589, 594-95 (Tex. Crim. App. 2003).  Accordingly,
the evidence is legally sufficient to support the guilty verdict.

In a
factual sufficiency review, we ask whether a neutral review of all the
evidence, though legally sufficient, demonstrates either that the proof of
guilt is so weak or that conflicting evidence is so strong as to render the
factfinder’s verdict clearly wrong and manifestly unjust.  Watson v. State,
204 S.W.3d. 404, 414-15 (Tex. Crim. App. 2006); Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000).  “The court reviews the evidence weighed
by the jury that tends to prove the existence of the elemental fact in dispute
and compares it with the evidence that tends to disprove that fact.”  Johnson,
23 S.W.3d at 7 (quoting Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim.
App. 1996)).  The appellate court “does not indulge in inferences or confine
its view to evidence favoring one side of the case.  Rather, it looks at all
the evidence on both sides and then makes a predominantly intuitive judgment. .
. .”  Id. (quoting William Powers and Jack Ratliff, Another Look at
“No Evidence” and “Insufficient Evidence,” 69 Texas L. Rev.
515, 519 (1991)).  The nature of a factual sufficiency review authorizes an
appellate court, although to a very limited degree, to act as the so-called
“thirteenth juror” to review the factfinder’s weighing of the evidence and
disagree with the factfinder’s determination.  Watson, 204 S.W.3d at
416-17.

When a defendant challenges the factual
sufficiency of the rejection of a defense, we must review all of the evidence
in a neutral light and ask whether the State’s evidence, taken alone, is too
weak to support the finding and whether the proof of guilt, although adequate
if taken alone, is against the great weight and preponderance.  Zuliani, 97
S.W.3d at 595.  The State meets its burden of persuasion by proving its case
beyond a reasonable doubt and thus need not produce evidence directly refuting
the evidence of the defense.  Id. at 594.

Self-defense is justified when a person
“reasonably believes” that “force is immediately necessary to protect himself
against the other’s use or attempted use of unlawful force.”  Tex. Pen. Code Ann. § 9.31(a) (Vernon
2003).  The use of deadly force is warranted only where “self-defense is
justified under Section 9.31, a reasonable person would not have retreated, and
when deadly force is reasonably necessary to protect against another’s
use or attempted use of deadly force.”  Bumguardner v. State,
963 S.W.2d 171, 173 (Tex. App.—Waco 1998, pet ref’d); see Tex. Pen. Code Ann. § 9.32(a)(1)-(3)
(Vernon 2003).

Regarding Castillo’s claim that the shooting was
an accident, the jury was instructed that a person commits an offense only if
he voluntarily engages in conduct, including an act, omission, or possession,
and that conduct is not rendered involuntary because the person did not intend
the results of his conduct.  See Tex.
Pen. Code Ann. § 6.01(a) (Vernon 2003).

Castillo testified that he was reminded by the
Flippins of the baseball bat attack by their occasional use of a “ping” sound
that purported to mimic the sound of an aluminum bat striking an object.  He
also testified to being subjected to racist epithets by the Flippins but admitted
that he used epithets about them.

Castillo described the shooting and the events
leading up to it as follows:

Well, I looked at him and he looked really angry. 
And whenever I seen that he come to a stop, I cut my truck off and I put it in
second gear.  I don’t put my emergency break on or nothing.  I just leave it in
gear.  It’s standard.

 

And I stepped out of the truck and it was cold and
I felt cold at the time, so I put my jacket on, my leather jacket that I had. 
I put my jacket on and I walked around to the driver’s side door of Bill’s
truck, and I asked him why he put a restraining order on me.

 

And his response was, “Because you always go over
there starting shit, you fucking bitch.”

 

At the time I asked him why he put the restraining
order on me, I put my hands in my pocket and I forgot I left my .380 pistol in
there.  And whenever he said, “Because you go over there starting shit, you
fucking bitch,” he said, immediately after that, “Mother fucker, I will kill
you.”

 

And he was reaching with his right arm.  He had
his left arm in the window, and he was reaching with his right arm behind his
lunchbox.  I seen something in front of his lunchbox with a black handle.  I
thought it was a pistol.  I thought he was reaching for a pistol.  

 

And I pulled that out and I pointed it at his body
and his lunchbox fell in the floor and it happened real quick.  He just – I
guess he seen that pistol pointing at his body and his response was – he picked
his arm up like that and hit the bottom of my hand, and the gun discharged
twice.  It just went, “bo-boom,” real quick.

 

And after that, he fell over and the engine revved
up and he ran into the side of my truck.  And whenever he hit the side of my
truck, it pushed it sideways a little bit.  And then the engine idled back
down, and I jumped in my truck through the passenger door and pulled the keys
out of my pocket and cranked the truck up and left.

 

            Castillo admitted that Flippin had
never hit, slapped, or pushed him, but he said that after Flippin said that he
would kill him and reached for an object with a black handle that Castillo
thought was a pistol, Castillo thought Flippin was going to kill him.  Castillo
admitted that he never saw a pistol, but only a weapon-like object with a black
handle, and that Flippin never actually grabbed the object.  He said he did not
retreat or flee because he feared that Flippin would have shot him in the back. 
While admitting that he had his finger on the trigger, Castillo denied
intending to shoot his gun or to shoot Flippin and said that he fled the scene
because he was scared.  Castillo understood from a DPS firearm examiner that
the .380 pistol had a ten-pound trigger pull, meaning that it took ten pounds
of pressure to make it fire, and that the trigger had to be pulled twice.

            One of the paramedics called to the
scene saw a homemade wood chisel with a black handle in Flippin’s truck.  The
investigating officers found no weapon in Flippin’s

truck or cooler, but several witnesses
acknowledged that the chisel could be used as a weapon.

We hold that the evidence is factually sufficient
to support the jury’s rejection of Castillo’s claims of accident/involuntary
conduct or self-defense beyond a reasonable doubt.  See Saxton, 804
S.W.2d at 913-14.  The jury was free to disbelieve Castillo’s claim that the
gun fired only because Flippin bumped it with his arm.  And deadly force was
unnecessary under the circumstances.  The only potential weapon in
Flippin’s truck was a wood chisel, and no evidence indicates that Flippin attempted
to use deadly force against Castillo.  The jury was free to disbelieve Castillo’s
testimony that Flippin said he would kill Castillo and that Flippin reached as
if to grab a weapon.  Castillo was armed and exercised deadly force where
a reasonable person in his position would have used nondeadly force, if
needed.  See Kelley v. State, 968 S.W.2d 395, 399 (Tex. App.—Tyler
1998, no pet).  A rational jury could have found that it was not
reasonable for Castillo to believe that the use of deadly force was immediately
necessary.  See Bumguardner, 963 S.W.2d at 174.  The jury was free
to reject Castillo’s claim that he thought Flippin was going to kill him.  See
Saxton, 804 S.W.2d at 913-14.

Moreover, a reasonable person would have
retreated.  It was Castillo who instigated the confrontation and approached Flippin
with a gun.  It was for the jury to decide whether Castillo’s “failure to
retreat was reasonable under the circumstances,” and the jury could have
concluded that a reasonable person in Castillo’s situation would have
retreated.  See Alvarado v. State, 821 S.W.2d 369, 372-73 (Tex.
App.—Corpus Christi 1991, no pet.).  The jury was free to reject Castillo’s self-defense
testimony.  See Goodman v. State, 66 S.W.3d 283, 285 (Tex. Crim. App.
2001); Upton v. State, 853 S.W.2d 548, 552 (Tex. Crim. App. 1993); Chambers
v. State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).  We overrule Castillo’s
third point.

Brady
Complaint

            In his fourth point, Castillo alleges
that the State failed to disclose evidence pertaining to an alleged conspiracy
between the Flippins and Limestone County law enforcement against Castillo.  If
anything, this point raises a Brady complaint:  A defendant has a due
process right to the disclosure of potentially exculpatory evidence that is
material to guilt or punishment.  Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  A prosecutor has an affirmative duty to
turn over material, favorable evidence to the defense, and the failure to turn
over such evidence violates due process.  Little v. State, 991 S.W.2d
864, 866 (Tex. Crim. App. 1999).  Favorable evidence is any evidence that, if
disclosed and used effectively, may make the difference between conviction and
acquittal, and it includes both exculpatory and impeachment evidence.  Exculpatory
evidence is testimony or other evidence that tends to justify, excuse or clear
the defendant from alleged fault or guilt.  Impeachment evidence is that which
is offered to dispute, disparage, deny, or contradict.  Id. (citing United
States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481
(1985); Thomas v. State, 841 S.W.2d 399, 404 (Tex. Crim. App. 1992))
(footnotes omitted).  Evidence withheld by a prosecutor is material if there is
“a reasonable probability that, had the evidence been disclosed to the defense,
the outcome of the proceeding would have been different.”  Bagley, 473 U.S. at 682, 105 S.Ct. at 3383.  A reasonable probability is a “probability sufficient to
undermine confidence in the outcome.”  Id.; Ealoms v. State, 983 S.W.2d
853, 859 (Tex. App.—Waco 1998, pet. ref’d).  Nonetheless, evidence is not
considered to be suppressed within the meaning of Brady if a defendant
or his attorney either knew, or should have known, of the essential facts
permitting him to take advantage of that evidence.  See Dalbosco v. State,
960 S.W.2d 901, 903 (Tex. App.—Texarkana 1997, order), disp. on merits,
978 S.W.2d 236 (Tex. App.—Texarkana 1998, pet. ref’d).

The evidence that is apparently the subject of
this point is a sheriff’s department call sheet made at the time the Flippins
contacted the sheriff’s department and requested to speak to a deputy about
getting the criminal trespass notice against Castillo.  It contains nothing
material to Castillo’s guilt or punishment, nor could it reasonably have been
used to impeach any witness.  Moreover, the information was provided to
Castillo in a different format in the pretrial deposition of Sheriff Wilson. 
Because there is no possibility of a Brady violation regarding this call
sheet, we overrule point four.

Evidentiary Rulings

Castillo’s sixth point complains that the trial
court erred in excluding evidence of the alleged motive of Deputy Butler, the
officer who served the criminal trespass notice on Castillo.  A trial court’s
exclusion of evidence is reviewed for abuse of discretion.  Martin v. State,
173 S.W.3d 463, 467 (Tex. Crim. App. 2005).  A trial court abuses its
discretion if its ruling falls outside the “zone of reasonable disagreement.”  Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).

Deputy Butler testified at length about serving
the criminal trespass notice on Castillo.  The trial court sustained the
State’s objection to the following question:  “How many Indian people are
members of your department?”  In a bill of exception, Deputy Butler denied that
his race, the Flippins’ race, or Castillo’s race had anything to do with his
service of the criminal trespass notice on Castillo.  The trial court did not
abuse its discretion in sustaining the State’s objection to the question. 
Point six is overruled.

Point seven asserts that the trial court abused
its discretion in refusing to allow discovery (depositions) of Deputy Butler
and Flippin’s widow Flora.  In a criminal case, depositions may be taken if
“good reason” exists.  Tex. Code Crim.
Proc. Ann. art. 39.02 (Vernon Supp. 2006).  A trial court has broad
discretion in ruling on an article 39.02 motion.  At his bond reduction
hearing, Castillo’s attorney called Flora as a witness.  He was also allowed to
informally interview both Deputy Butler and Flora at a pretrial hearing, and
later Castillo was allowed to send Flora interrogatories, which she answered
under oath.  The trial court did not abuse its discretion in refusing to allow
the depositions of Deputy Butler and Flora Flippin.  We overrule point seven.

Having overruled all of Castillo’s points, we
affirm the trial court’s judgment.

 

 

BILL VANCE

Justice

 

Before
Chief Justice Gray,

Justice Vance, and

Justice Reyna

Affirmed

Opinion
delivered and filed April 4, 2007

Do
not publish

[CRPM]