Opinion issued April 23, 2009









 







In The 

 Court of Appeals

 For The

 First District of Texas






NO. 01-08-00038-CR

____________


JON BENOIT GUILBEAU, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 228th District Court

Harris County, Texas

Trial Court Cause No. 975831





 

MEMORANDUM OPINION

 Appellant, Jon Benoit Guilbeau, appeals a judgment that sentences him to 20
years in prison and a $10,000 fine for the second-degree felony of manslaughter. See
Tex. Penal Code Ann. § 19.04(a) (Vernon 2003). Appellant pleaded not guilty to
the jury. The jury found appellant guilty and determined his sentence. In three
issues, appellant contends the trial court erred by commenting on the weight of the
evidence in its instructions to the jury, admitting evidence of extraneous offenses in
the guilt stage of trial, and making an affirmative finding of a deadly weapon in the
judgment and sentence. We conclude the trial court properly instructed the jury and
made an affirmative finding of a deadly weapon in the judgment. We also conclude
appellant waived his complaint about the admission of extraneous offenses by failing
to object at trial on the same grounds asserted in this appeal. We affirm.

Background

 The deceased, Galen "Sparky" Sczech, and Patrick Smoley, a friend, were
walking toward their car at around two in the morning after drinking at a bar. As
Sczech and Smoley were walking through the parking lot, appellant began to quickly
back his car out of its parking spot, nearly hitting Sczech and Smoley, who were
behind appellant's car at the time. Sczech and Smoley each jumped to one side of
appellant's car to avoid being hit and slapped the side of appellant's car with an open
palm to get appellant's attention. Smoley used an obscenity towards appellant and
told him to pay attention. 

 According to Smoley, he and Sczech walked away from appellant after
slapping his car, but appellant stepped out of his car. Appellant yelled, "Don't hit my
car. Don't hit my car." Sczech turned to walk back toward appellant. Smoley tried
to stop Sczech, but Sczech pushed Smoley away. Sczech had his hands to his sides
as he walked a couple of feet toward appellant at a "regular" pace. At that point,
appellant pointed a gun at Sczech. As appellant stood about five to eight feet from
Sczech, appellant fired the gun once, causing Sczech to fall. Smoley explained that
he and Sczech were unarmed and made no threats toward appellant. 

 Appellant gave a different version of the events. According to appellant, after
Sczech and Smoley slapped appellant's car, Sczech followed appellant as appellant
walked back to his car. Sczech told appellant, "You're a dead man walking." Sczech
used his finger to "stab" at appellant's chest. Sczech yelled obscenities at appellant,
then Smoley led Sczech away from appellant. After a short period of time, appellant
heard someone yell an obscenity and saw Smoley and Sczech coming toward him. 
Appellant pulled out a gun that he had in his pocket. Appellant pointed the gun at
them, but Sczech was undeterred and he continued to come towards appellant. 
Appellant explained he shot Sczech in self-defense because he feared he would
receive serious bodily injury. 

 After appellant testified, the State made a proffer of the rebuttal extraneous
offense evidence it intended to introduce, and appellant objected to the admission of
the rebuttal evidence on various grounds. Appellant objected to testimony from
Hunter Cage on the grounds that no evidence showed appellant was the aggressor
against Cage and no criminal charges were filed against appellant for the incident
with Cage. Appellant objected to testimony from Grant Johnson, asserting the
testimony was based on hearsay, appellant was not the first aggressor, appellant only
threw soda water, and no assault charges were filed. Appellant objected that
testimony from Steven Solis was speculative because Solis never saw a gun placed
to Solis's back and appellant said the object was a flask. Appellant objected to all of
these witnesses by claiming the evidence was speculative, overly prejudicial, and
lacked any probative value. The trial court ruled it would admit the extraneous
evidence. Cage, Solis, and Johnson then testified in the rebuttal phase of trial
concerning extraneous offenses committed by appellant. The trial court granted
appellant's request for a limiting instruction and gave the limiting instruction when
the evidence was admitted and again in the written instructions to the jury.

 When both sides rested, the trial court's charge allowed the jury to find
appellant guilty of murder, guilty of manslaughter, or not guilty. The charge
instructed the jury to find appellant not guilty if it determined he reasonably believed
that his use of deadly force was immediately necessary to protect himself against
Sczech's use or attempted use of unlawful deadly force. The trial court limited the
deadly force instruction by telling the jury that the defendant's use of force against
another was not justified if the defendant sought an explanation from or discussion
with the other person concerning the defendant's differences with the other person
while the defendant was carrying a weapon in violation of the law. 

 Neither the guilt nor punishment phase of trial contained a special issue asking
the jury to separately determine whether appellant used or exhibited a deadly weapon
during the commission of the offense. However, in accordance with the jury's
finding that appellant shot Sczech with a deadly weapon, namely a firearm, the trial
court made an affirmative finding of a deadly weapon in the judgment. 

Limitation on the Right of Self-Defense

 In his first issue, appellant contends the instruction on the right to arm himself,
which limited the self-defense charge, was a comment on the weight of the evidence. 
Appellant contends "the jury could not have disregarded the trial [c]ourt's charge,
since it effectively negated the very real elements of fear and the danger of the use of
deadly force by two large men that the Appellant felt, and undercut completely the
charge of self-defense generally." Appellant asserts the limitation on self-defense
"has the exact same effect as to deny the Appellant a charge on self-defense
altogether, because it focuses the jury on his action, not the apparent danger he was
in" and "because the jury is asked to focus its deliberations on whether the Appellant
should or should not have and [sic] a gun at all, not whether he was justified in using
it." 

 When reviewing charge errors, an appellate court must first determine whether
error actually exists in the charge. Middleton v. State, 125 S.W.3d 450, 453 (Tex.
Crim. App. 2003). Only if the court finds error do we proceed to the second step that
requires examination of harm resulting from the error. Id. 

 The trial court may not issue an instruction that by its very nature is a comment
on the weight of the evidence. See Brown v. State, 122 S.W.3d 794, 798 (Tex. Crim.
App. 2003). Article 36.14 of the Code of Criminal Procedure requires the trial judge
to give the jury: 

a written charge distinctly setting forth the law applicable to the case; 
not expressing any opinion as to the weight of the evidence, not
summing up the testimony, discussing the facts or using any argument
in his charge calculated to arouse the sympathy or excite the passions of
the jury. 


Id. at 797 (quoting Tex. Code Crim. Proc. art. 36.14). "Texas courts are forbidden
from instructing the jury on any presumption or evidentiary sufficiency rule that does
not have a statutory basis." Id. at 799.

 The penal code provides that a defendant is justified in using deadly force
when he has a reasonable belief that it is immediately necessary to protect himself
from another person's use of deadly force. See Tex. Penal Code Ann. §§ 9.31(a),
9.32(a) (Vernon Supp. 2008). An exception to self-defense applies when the
defendant "sought an explanation from or discussion with the other person
concerning the [defendant's] differences with the other person while the [defendant]
was carrying a weapon in violation of Section 46.02." (1) Id. § 9.31(b)(5)(B). A charge
limiting a defendant's right to self-defense is properly given when (1) self-defense is
an issue; (2) there are facts in evidence that show that the defendant sought an
explanation from or discussion with the victim concerning their differences; and
(3) the defendant was unlawfully carrying a weapon. Lee v. State, 259 S.W.3d 785,
789 (Tex. App.--Houston [1st Dist.] 2008, pet. ref'd). If there is evidence raising the
issue, an instruction should be submitted. See Bumguardner v. State, 963 S.W.2d
171, 175 (Tex. App.--Waco 1998, pet. ref'd) (citing Matthews v. State, 708 S.W.2d
835, 838 (Tex. Crim. App. 1986)). 

 The three circumstances are present here. First, the jury charge instructs the
jury on the law of self-defense, stating that a person is justified in using force against
another when he reasonably believes the force is immediately necessary to protect
himself against another person's use of unlawful force. The charge also states that
if the jury finds the defendant acted reasonably, they must find him not guilty and any
doubt should be resolved in favor of the defendant. The charge then explains the law
of provocation, stating that if the defendant intended to bring on the difficulty with
the victim, the jury should find the defendant guilty of murder. The charge then
limits the deadly force instruction, as follows:

 You are further instructed as part of the law of this case, and as a
qualification of the law on self-defense, that the use of force by a
defendant against another is not justified if the defendant sought an
explanation from or discussion with the other person concerning the
defendant's differences with the other person while the defendant was
carrying a weapon in violation of the law. A person commits an offense
if he intentionally, knowingly, or recklessly, carries on or about his
person a handgun. "Handgun" means any firearm that is designed,
made, or adapted to be fired with one hand. 


 The second factor, which asks whether there are facts in evidence that show
that the defendant sought an explanation from or discussion with the victim
concerning their differences, is also met. Some evidence raises the issue that
appellant was unlawfully carrying a weapon at the time he claims he acted in self-defense. Smoley testified that he and Sczech walked away from appellant after they
slapped appellant's car. As they walked away, appellant, while holding a firearm,
yelled at Sczech and Smoley, telling them not to "hit" his car. Smoley's testimony
shows appellant, while armed with the firearm, pursued a discussion with Smoley and
Sczech about their having slapped appellant's car. 

 Concerning the third factor, appellant's testimony did not provide any lawful
basis for him to carry a weapon. The jury could reasonably conclude the appellant
was carrying the weapon in violation of the penal code. Based on the evidence
admitted at trial, the trial court did not err by instructing the jury that it should find
against appellant on his claim of self-defense if it found, beyond a reasonable doubt,
that deadly force was used by appellant when he was seeking a discussion while
unlawfully carrying a weapon. See Lee, 259 S.W.3d at 790-91 (holding evidence
raised issue that Lee had prior dispute with Alexander, and some evidence existed
that Lee was seeking a discussion with Alexander when he shot Alexander because
Lee walked up and spoke to Alexander about subject of their disagreement while
unlawfully carrying weapon); Fink v. State, 97 S.W.3d 739, 741, 743 (Tex.
App.--Austin 2003, pet. ref'd) (holding that trial court did not err by instructing jury
on seeking explanation when evidence showed that Fink went to his apartment after
verbal altercation with victim and immediately returned to scene armed with firearm
"to see if the guy was coming after [him]"); Bumguardner, 963 S.W.2d at 175-76
(holding evidence raised issue that Bumgaurdner sought explanation from victim
because evidence existed that showed Bumguardner had differences with victim,
demanded to know where his wife was, and yelled at victim while unlawfully
carrying weapon, and self-defense was submitted to jury). Because there was
evidence raising the issue and the jury charge conformed to the statutory requirements
in the penal code, the instruction was not a comment on the weight of the evidence.
See Brown, 122 S.W.3d at 802 (holding instruction was impermissible comment on
weight of evidence because instruction "fail[ed] to clarify the law for the jury"). We
overrule appellant's first issue.

Extraneous Offenses

 In his second issue, appellant contends that the trial court erred by admitting
extraneous offenses during the guilt or innocence phase of trial because "the 'false
impressions' which supposedly needed to [b]e rebutted were created by the State on
cross-examination of the defendant." The State responds that error is waived because
appellant never asserted that objection to the evidence to the trial court. 

 "As a general rule, the defensive theory that the State wishes to rebut through
the use of extraneous offense evidence must be elicited on direct examination by the
defense and may not by elicited by 'prompting or maneuvering' by the State." 
Wheeler v. State, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002) (citing Shipman v.
State, 604 S.W.2d 182, 185 (Tex. Crim. App. 1980) (stating that State "may not rely
on its own questioning" to get into collateral matters, extraneous offenses, and bad
acts that "would otherwise be inadmissible")). 

 To preserve a complaint for appellate review, a defendant must make a timely,
specific objection to the trial court. Tex. R. App. P. 33.1(a); see Wilson v. State, 71
S.W.3d 346, 349 (Tex. Crim. App. 2002). An objection stating one legal basis may
not be used to support a different legal theory on appeal. See Heidelberg v. State, 144
S.W.3d 535, 537 (Tex. Crim. App. 2004). A complaint on appeal that does not
comport with an objection made at trial does not preserve appellate review of the
complaint. Wilson, 71 S.W.3d at 349; Goff v. State, 931 S.W.2d 537, 551 (Tex. Crim.
App. 1996); Flores v. State, 125 S.W.3d 744, 747 (Tex. App.--Houston [1st Dist.]
2003, no pet.). 

 Appellant never asserted any complaint at trial that the State created, through
its own questioning, the theory that it later sought to rebut with extraneous evidence. 
At trial, appellant objected only under Rule 404(b) to the extraneous offense
evidence. Tex. R. Evid. 404(b) (extraneous evidence must have probative value
beyond character conformity). Because appellant failed to object to the evidence on
the ground on which he asserts on appeal, error is waived. See Heidelberg, 144
S.W.3d at 537. We overrule appellant's second issue.

Deadly Weapon Finding

 In his third issue, appellant contends the trial court's judgment and sentence
should be reformed to reflect that there was no affirmative finding on the use of a
deadly weapon. Appellant objects to the finding because the jury never expressly
made that finding in the guilt or punishment phase.

 An affirmative finding of a deadly weapon is properly made when the record
shows (1) the indictment alleges "a deadly weapon: to wit, a firearm"; (2) the jury
charge application paragraph for the lesser-included offense of manslaughter requires
a finding, beyond a reasonable doubt, that the defendant used "a deadly weapon: 
to-wit, a firearm"; and (3) the jury's verdict finds the defendant guilty of the
lesser-included offense of manslaughter, with the express finding that he used a
firearm, which is a deadly weapon per se, to cause the complainant's death. Lafleur
v. State, 106 S.W.3d 91, 99 (Tex. Crim. App. 2003). The requirement for an "express
finding" of a deadly weapon is satisfied "by looking to the explicit requirements of
the application paragraph as well as to the indictment and verdict form." Id. at 98. 
In Lafleur, the Court of Criminal Appeals held the trial court properly made an
affirmative finding of a deadly weapon in the judgment based on a record that showed
Lafleur was indicted for murder for shooting Walker with "a deadly weapon, to-wit:
a firearm"; there was no dispute at trial that Lafleur shot and killed Walker with a
firearm; the jury charge application paragraph allowed the jury to find Lafleur guilty
for recklessly causing the death of Walker by shooting Walker with a deadly weapon,
to-wit: a firearm; and the jury found Lafleur guilty of manslaughter. See id. at 99.

 The conditions for making an affirmative finding of a deadly weapon are
satisfied here. See id. The first factor is satisfied by the indictment that pleads
appellant committed murder with "a deadly weapon, namely a firearm." The second
factor is met by the instructions in the jury application paragraph for the
lesser-included offense of manslaughter that require a finding, beyond a reasonable
doubt, that appellant caused the death of Szcech by shooting him with "a deadly
weapon, namely a firearm." The third factor is satisfied by the verdict form that
shows the jury found appellant guilty of manslaughter under the terms described in
the jury instructions, which require a finding that appellant shot Szcech with a deadly
weapon, namely a firearm. See id. Moreover, there was no dispute that appellant
shot Szcech with a firearm, which is per se a deadly weapon; the dispute was whether
Szcech was acting in defense of himself at the time of the shooting. Because the
record shows the jury found appellant used a deadly weapon, namely a firearm, the
trial court properly made an affirmative finding of a deadly weapon in the judgment. 
See id. We overrule appellant's third issue. 



Conclusion

 We affirm the judgment of the trial court.




 Elsa Alcala

 Justice


Panel consists of Chief Justice Radack, and Justices Alcala and Hanks.

Do not publish. Tex. R. App. P. 47.2(b).

1. Section 46.02 of the Texas Penal Code states, "A person commits an offense if he
intentionally, knowingly, or recklessly carries on or about his person a handgun,
illegal knife, or club . . . ." Tex. Penal Code Ann. § 46.02(a) (Vernon Supp. 2008).