Affirmed and Memorandum Opinion filed March 30, 2010.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00076-CR

___________________

 

Bill Collins A.K.A. Willie Otis Collins,
Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 54th District Court 

McLennan County,
Texas



Trial Court Cause No. 2007-1624-C2

 



 

 

MEMORANDUM  OPINION

            Appellant
was convicted of one count of aggravated assault and one count of evading
arrest.  See Tex. Penal Code Ann. §§ 22.01, 22.02(a)(2), 38.04(a)
(Vernon 2003).  The jury assessed punishment at twenty years’ confinement in
the Texas Department of Criminal Justice, Institutional Division for the
aggravated assault count, and two years’ confinement in the Texas Department of
Criminal Justice, State Jail Division for the evading arrest count—to run
concurrently.  Appellant challenges his conviction in two issues: (1) the trial
court erred by overruling his Batson challenge and (2) the trial court
erred by limiting his self-defense instruction in the jury charge.  We affirm. 

 

Factual and Procedural Background

             Appellant and the
complainant had a long-standing feud over a female named Frankie Roulhac, whom
the complainant was dating.  During trial, the complainant testified that at
approximately 9:15 p.m. on July 31, 2007, the complainant and Roulhac went out
to dinner.  Forty-five minutes later, Roulhac and the complainant were on the
way home when they saw appellant in his vehicle on the side of the road. 
Appellant began following them in his vehicle.  Eventually, the complainant
stopped and appellant pulled his vehicle up next to the complainant’s. 
According to the complainant, appellant got out of his car and walked toward
the complainant’s car.  The complainant rolled down his window and asked
appellant what he was doing.  Appellant admitted he was following them.  The
complainant got out of his vehicle and got into an argument with appellant
about why appellant was following them.  The complainant testified appellant
lunged at his throat.  Before appellant could reach him, the complainant threw
appellant onto the ground and kneed him at least two times.  The complainant
allowed appellant to get up and both men got back into their respective vehicles. 
On cross-examination, the complainant admitted that after he allowed appellant
to get up from the ground, he grabbed appellant by the throat and warned him
not to mess around with him anymore.  The complainant and Roulhac drove back to
Roulhac’s house where the complainant was living at the time.  

            According
to the complainant, when they arrived at Roulhac’s house they saw appellant
parked in front of her house.  The complainant continued driving because, he
testified, he knew that appellant was carrying a gun.  The complainant and
Roulhac discussed getting a motel room for the night to avoid appellant. 
Eventually, they decided to drive by appellant’s mother’s home to determine if
he was there.  Appellant’s vehicle was not at his mother’s house.  Roulhac and
the complainant continued to drive around until approximately 1 a.m., when they
decided to go home because they were tired.  

            As
they were walking into the house from the driveway, the complainant heard a
shot.  The complainant walked across the street to determine where the shot
came from.  A second shot was fired, hitting the complainant in the leg.  The
complainant looked toward where he thought the shot had come from and saw
appellant getting out of the bushes across the street.  Appellant then fired a
third shot, hitting the complainant in his other leg.  Appellant walked across
the street to where the complainant was laying on the ground and shot the
complainant two more times in his abdomen.  Appellant hit the complainant in
the head with his gun and walked off.  An ambulance took the complainant to the
hospital.  The complainant suffered extensive injuries from the bullet wounds. 
           

            After
the complainant finished testifying, the State called Roulhac.  Roulhac’s
testimony was substantially similar to the complainant’s; however, Roulhac
testified that after the initial encounter with appellant they did not go back
by her house and see appellant parked outside.  

            After
the State rested its case, appellant took the stand.  Appellant testified he
was not following the complainant and Roulhac after they finished eating. 
Instead, appellant testified the complainant and Roulhac pulled their vehicle
up next to his.  Appellant explained that at first he only saw the complainant
in the vehicle, so he got out of his vehicle to confront him.  But upon getting
out of his vehicle, appellant noticed Roulhac was also in the vehicle. 
Appellant testified he turned around and walked away from the vehicle. 
According to appellant, after turning away from the complainant’s vehicle, the
complainant got out of his vehicle and began pushing appellant.  The
complainant brought appellant to the ground by pressing all of his body weight
against appellant.  Appellant testified he was in great pain, to the point
where he felt like he “was dying”.  Appellant explained he believed the
complainant’s intent was to kill appellant, and would have, if Roulhac had not
requested the complainant leave appellant alone.  

            After
the roadside altercation concluded, appellant testified that he drove to his
friend’s house; however, she was not home so appellant tried to locate other
local friends.  Appellant was unable to contact other friends because, he
testified, he repeatedly saw the complainant drive by.  At this point,
appellant had taken a gun out of his vehicle and was carrying it on his person. 
Appellant told the jury that eventually he gave up on trying to get help and
found himself sitting outside Roulhac’s house.  

            Eventually,
appellant saw the complainant and Roulhac drive into Roulhac’s driveway. 
Appellant testified that he immediately went toward the complainant because he
“saw the devil”.  Appellant told the jury that instead of seeing the
complainant’s face he saw the devil’s face.  Appellant testified that he began
shooting at “it” (the devil/ the complainant) until he heard his gun making
click noises, indicating he was out of bullets.  After seeing the complainant
struggling on the ground “like a snake”, appellant decided he needed to turn
himself in at the police station.  Appellant testified that while he was
driving to the police station, police vehicles with their sirens and lights on
began following him.  Appellant did not pull over because he believed it would
be too dangerous.  He thought he would be safer if he just drove to the police
station because a relative of his had been killed when he stopped for police on
the side of the road.   

Discussion

I.         Batson
Challenge

            In
his first point of error, appellant contends the trial court committed
reversible error when it overruled his Batson challenge.  See Batson
v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). 
Specifically, appellant argues the State used one of its peremptory strikes to
discharge venire member five because of his race. 

            A.        Applicable
Law

            In
Batson, the moving party must first make a prima facie case showing the
striking party exercised its peremptory challenge on the basis of race.  Purkett
v. Elem, 514 U.S. 765, 767, 115 S. Ct. 1769, 1770, 131 L. Ed. 2d 834
(1995); Contreras v. State, 56 S.W.3d 274, 278 (Tex. App.—Houston [14th
Dist.] 2001, pet. ref’d); see also Code Crim. Proc. Ann. art.
35.261(Vernon 2009).  The burden then shifts to the striking party to provide a
race-neutral explanation for the strike.  Purkett, 514 U.S. at 767, 115
S. Ct. at 1770–71.  If the striking party articulates a race-neutral
explanation, the moving party is given an opportunity to respond, since that
party has the ultimate burden of proving purposeful discrimination.  Id.;
Wamget v. State, 67 S.W.3d 851, 858 (Tex. Crim. App. 2001).  Finally,
the trial court must determine whether the moving party met the burden of proving
purposeful discrimination.  Purkett, 514 U.S. at 767, 115 S. Ct. at
1770–71.  The best evidence will often be the demeanor of the attorney who
exercises the strike.  Hernandez v. New York, 500 U.S. 352, 365, 111 S.
Ct. 1859, 1869, 114 L. Ed. 2d 395 (1991).  We apply a clearly erroneous
standard of review to the trial court’s decision and will reverse only if we
are left with a definite and firm conviction an error has been committed.  Hill
v. State, 827 S.W.2d 860, 865–66 (Tex. Crim. App. 1992); Contreas,
56 S.W.3d at 278.  

            B.        Analysis

            The
State used a peremptory strike to remove venire member five, Charles Lee, from
the jury panel.  Lee was the single African-American venire member remaining
after the two other African-American venire members had been stricken for
cause.  Appellant lodged a Batson challenge to the State’s peremptory
strike of Lee.  The State gave two reasons for its peremptory strike of Lee:
(1) Lee was the only possible juror remaining, after challenges for cause and
the State’s nine other peremptory strikes had been used, who had not cited
retribution as the most important punishment theory; and (2) Lee expressed
great interest in probation.  The trial court found the State’s basis for the
strike race-neutral and overruled appellant’s Batson objection.

            Appellant
contends the State’s first stated race-neutral reason is not supported by the
record.  The State explained that it struck Lee because he was the only
remaining venire member who had not selected retribution as what he considered
the most important punishment theory.  The records reflects Lee was not the
only remaining venire member who had not selected retribution.  After the
challenges for cause and the nine other peremptory strikes were used, there
were at least four other venire members who had not selected retribution as the
most important punishment theory.  

            As
the party making the Batson challenge, appellant had the burden to show
that the explanation given was merely a pretext for discrimination.  Johnson
v. State, 68 S.W.3d 644, 649 (Tex. Crim. App. 2002) (citing Ford v.
State, 1 S.W.3d 691, 693–94 (Tex. Crim. App. 1999)).  It is not enough
merely to show that a proffered explanation turns out to be incorrect.  Id. 
Furthermore, a party’s failure to offer any real rebuttal to a proffered race
neutral explanation can be fatal to his claim.  Id. (citing Chamberlain
v. State, 998 S.W.2d 230, 236 (Tex. Crim. App. 1999)).  All appellant has
proven on appeal is the reason given was incorrect; this is not equal to
proving the reason given was a pretext for a racially motivated strike.  Ford,
1 S.W.3d at 694.  Appellant did not meet his burden of persuasion to
successfully challenge the State’s peremptory strikes at trial.  Id. 

            Moreover,
the State’s second race-neutral reason is supported by the record.  The record
reflects Lee explained he thought probation is something “you should definitely
consider”.  The State argues these statements reflect that Lee has a
soft-stance on punishment, and therefore its basis for striking Lee was not
discriminatory.  We agree.  Having offered an explanation void of any racially
discriminatory intent on its face, the State met its burden of articulating a
race-neutral explanation.  Appellant failed to rebut the State’s race-neutral
explanation.  Accordingly, the trial court did not err in overruling
appellant’s Batson challenge. 

            For
the above reasons we overrule appellant’s first issue.          

II.        Jury Charge

            In
his second issue, appellant contends the trial court erred by limiting his
claim of self-defense in the jury charge.  The jury charge included an
instruction on self-defense and the following limitation to self-defense:

[w]hile a Defendant has the right to seek an explanation
from or discussion with another concerning a difference with the other person,
the use of force against another is not justified if the Defendant sought an
explanation from or discussion with another concerning a difference with the
other person while the Defendant was unlawfully carrying a handgun.

See Tex. Penal Code Ann. §
9.31(b)(5) (Vernon 2003).  Appellant failed to object to this instruction at
trial.  

            A.        Standard
of Review 

            When
reviewing charge errors, an appellate court must first determine whether error
actually exists in the charge.  Middleton v. State, 125 S.W.3d 450, 453
(Tex. Crim. App. 2003).  Only if the court finds error do we proceed to the
second step that requires examination of harm resulting from the error.  Id. 
            

            If
an error in a jury charge was the subject of a timely objection in the trial
court, then reversal is required if the error is calculated to injure the
rights of the defendant, which means no more than there must be some
harm to the accused from the error.  Almanza v. State, 686 S.W.2d 157,
171 (Tex. Crim. App. 1984).  In other words, an error which has been properly
preserved by objection will call for reversal as long as the error is not
harmless.  Id.  On the other hand, if no proper objection was made at
trial, as in this case, and the accused claims the error was fundamental he
will obtain reversal only if the error is so egregious and created such harm
that he has not had a fair and impartial trial—egregious harm.  Id.   

            B.        Applicable
Law

            A
defendant is entitled to an instruction on every defensive issue raised by the
evidence.  Elmore v. State, 257 S.W.3d 257, 259 (Tex.
App.—Houston [1st Dist.] 2008, no pet.).  A defensive
issue may be raised solely by the defendant’s testimony.  Id.  In
determining whether the defendant’s testimony raises an issue of self-defense,
the truth of the defendant’s testimony is not at issue.  Id. 
Ordinarily, issues like provocation or whether the defendant carried a gun to a
discussion are fact issues, and they are included in the jury’s charge as
limitations to self-defense.  Id.

            A
charge limiting a defendant’s right to self-defense under section 9.31(b)(5) is
properly given when (1) self-defense is an issue; (2) there are facts in
evidence that show the defendant sought an explanation from or discussion with
the victim concerning their differences; and (3) the defendant was unlawfully
carrying a weapon.  Bumguardner v. State, 963 S.W.2d 171, 175 (Tex.
App.—Waco 1998, pet. ref’d).  Here, appellant raised the issue of self-defense
by his testimony and the trial court submitted an instruction on self-defense
to the jury.  Additionally, the trial court submitted an instruction on whether
appellant was unlawfully carrying a weapon.  Therefore, we must determine
whether the evidence shows appellant sought an explanation or discussion with
the complainant concerning their differences.   

            C.        Analysis

            Appellant,
Roulhac, and the complainant all testified there was an altercation between
appellant and the complainant at approximately 10 p.m.  Additionally, there was
testimony presented demonstrating a long-standing feud between appellant and
complainant over Roulhac.  The complainant and Roulhac testified that a few
hours after the roadside altercation they returned home to discover appellant
hiding in the bushes across from Roulhac’s home with a gun.  Additionally,
appellant himself testified that he found himself outside Roulhac’s house
sometime after the fight.  The evidence of the dispute between appellant and the
complainant and appellant’s presence at Roulhac’s house later in the evening
could lead a reasonable juror to conclude appellant was at Roulhac’s house to
discuss with the complainant their differences over Roulhac.  Accordingly, the
evidence raised the issue of whether appellant was at Roulhac’s house seeking
an explanation while unlawfully carrying a handgun.  See Elmore, 257
S.W.3d at 257–58 (seeking an explanation instruction proper where long-standing
feud existed between neighbor and the armed defendant confronted neighbor
because of damaged grass).  Thus, the trial court did not err in including this
in the jury charge.  Appellant’s second issue is overruled.  

Conclusion

            Having
overruled both of appellant’s issues, we affirm the judgment of the trial
court.     

                                                                                    

John S. Anderson

                                                                                    Justice

 

 

Panel consists of Chief Justice Hedges and Justices
Anderson and Christopher.

Do Not Publish — Tex. R. App. P. 47.2(b).