TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00567-CR







Kevin Matthew Fink, Appellant



v.



The State of Texas, Appellee







FROM THE CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY


NO. 0787938D, HONORABLE SHAREN WILSON, JUDGE PRESIDING







O P I N I O N



Appellant Kevin Matthew Fink fatally shot Phillip Pollard on October 12, 2002, in
the parking lot of the Oak Valley Apartments in Arlington. A jury found him guilty of murder and
assessed punishment, enhanced by a previous felony conviction, at imprisonment for ninety-nine
years and a $5000 fine. See Tex. Pen. Code Ann. § 19.02 (West 1994). He brings forward three
points of error, each complaining of the district court's jury instructions regarding self-defense. We
will overrule these points and affirm the judgment of conviction.

Steven Kotera and his girlfriend, Rhonda Wells, lived in an apartment in the Oak
Valley complex. (1) On the day of the shooting, appellant was either visiting or living with Kotera and
Wells. (2) During the late afternoon, Kotera and appellant began to argue over "something petty." 
Appellant left the apartment, went downstairs to the street, and began to walk away. Kotera followed
appellant and called for him to come back. Appellant replied in a loud voice, "[N]o, fuck that
nigger, I don't want to come back and talk to you, I'm leaving." Suddenly, a car stopped beside
Kotera. The sole occupant of the car, Pollard, shouted at Kotera, "[W]as that you hollering that
nigger shit, bitch ass white boy?" (3) When Kotera replied, "No, I wasn't," Pollard said, "I bet it was
your homeboy." Pollard drove forward and stopped beside appellant, got out of his car, and began
to scream, "Was it you that said that bitch ass nigger shit white boy." Appellant told Pollard that he
wanted no trouble and attempted to back away. Pollard shoved both appellant and Kotera. Pollard
then turned toward his car and said, "I got something for your ass right here in the car." Believing
that Pollard had a gun, Kotera and appellant fled. 

Kotera and appellant returned to the apartment. There, they armed themselves with
pistols and went back downstairs "to see if the guy was coming after us." Pollard drove into the
parking lot, jumped out of his car, and started shouting profanities. Appellant walked toward
Pollard, who reached behind his back "as if he was pulling a gun from his back area." As Pollard
brought back his hand, appellant pulled his pistol from his pocket, pointed it at Pollard, and fired five
times.

A different account of the fatal confrontation in the parking lot was provided by
Brock Kuharchek, who was delivering a pizza to the apartment complex. He testified that as he
entered the parking lot, he saw appellant standing beside Pollard's car. (4) Appellant was leaning
toward the car, and appeared to be arguing with the driver. Kuharchek went about his business and
did not see what happened next, but as he was leaving he saw the car rolling slowly, then come to
a stop. Pollard "stepped out, staggered into this grass over here and collapsed." No weapons were
found at the scene, and Pollard was apparently unarmed.

The district court instructed the jury on the use of deadly force in self-defense. See
Tex. Pen. Code Ann. § 9.32 (West Supp. 2003). The court limited appellant's right to self-defense
by further instructing the jury to convict him of murder if it found beyond a reasonable doubt that
he intentionally provoked the difficulty with Pollard "to produce the occasion for killing" him, or
if it found beyond a reasonable doubt that appellant was seeking an explanation from or discussion
with Pollard while unlawfully carrying a handgun. Appellant contends the court erred by giving
these limiting instructions because the issues were not raised by the evidence.


Provocation

As a general rule, the use of force against another in self-defense is not justified if the
actor provoked the other's use or attempted use of unlawful force. Id. § 9.31(b)(4). A charge on
provocation is required when there is sufficient evidence that (1) the defendant did some act or used
some words which provoked the attack on him, (2) such act or words were reasonably calculated to
provoke the attack, and (3) the act was done or the words were used for the purpose and with the
intent that the defendant would have a pretext for inflicting harm upon the other. Smith v. State, 965
S.W.2d 509, 513 (Tex. Crim. App. 1998). Each of the three elements may be proved
circumstantially. Id. at 515 (provocation in fact), 517 (reasonableness), 518 (intent). A provocation
instruction should be given only if there is evidence from which a rational trier of fact could find
each element beyond a reasonable doubt. Id. at 514. On appeal, we view the evidence in the light
most favorable to giving the instruction to determine if the instruction was warranted. Id. 

The evidence before us shows that the initial confrontation between Pollard and
appellant ended without incident when appellant and Kotera fled to the safety of the apartment. 
Instead of remaining in the apartment, however, appellant and Kotera armed themselves and went
to the parking lot to look for Pollard. A rational trier of fact could infer from this and from
appellant's subsequent conduct in the parking lot that appellant, intending to give himself a pretext
for shooting Pollard, engaged in conduct that was reasonably calculated to and did provoke an attack
by Pollard.

Appellant urges that provocation could not be an issue in this cause because Pollard
was the initial aggressor. Citing Trevino v. State, 204 S.W. 996, 999 (Tex. Crim. App. 1918) (op.
on reh'g), he asserts that a provocation instruction is proper only if the defendant's provoking
conduct precedes the difficulty. He argues that if the deceased initiates the difficulty, the defendant's
subsequent words or acts cannot be considered provocation.

The events in Trevino took place at a dance. Id. at 998. Two men began to argue
over who would dance with a particular woman. Id. The woman's brother, the defendant, attempted
to mediate the argument. Id. The organizer of the dance, the deceased, told the defendant (in so
many words) to mind his own business, then pushed and struck him. Id. The defendant and the
deceased took their argument outside, where the deceased continued to push and strike the defendant. 
Id. The defendant then called the deceased "the son of a harlot." Id. The fight continued, and
eventually the defendant fatally shot the deceased. Id. The court of criminal appeals held that the
trial court erred by limiting the defendant's right of self-defense with an instruction on provoking
the difficulty. Id. at 999. The court wrote:


Usually the language that some of the witnesses impute to defendant, that deceased
was the "son of a harlot," would be considered a provocation, and had it been used
at the beginning of this difficulty and the inducing cause, it would have been treated
as a cause upon which provoking a difficulty could be grounded. But, as before
stated, provoking a difficulty must precede and be the occasion of bringing about the
difficulty. Where the accused is not in the wrong originally, but during the progress
of the difficulty he uses such language, it would not be considered as provoking a
difficulty. . . . If the deceased provoked the difficulty, and during its progress the
defendant does something that would have produced the difficulty had it been used
prior to the difficulty, the question of provoking a difficulty would arise, but the facts
we think do not justify that conclusion [in this case].



Id. 

It is unclear if Trevino holds, as appellant suggests, that when the deceased initiates
the difficulty, any subsequent provocative conduct by the defendant cannot justify a provocation
instruction, or if it simply holds that a provocation instruction was not warranted by the defendant's
conduct in that case. Assuming that appellant's reading of Trevino is correct, it does not apply here. 
In Trevino, there was one continuous "difficulty" between the defendant and the deceased which was
initiated by the deceased. In the cause before us, there were two "difficulties." The first, the
argument on the street, was begun by Pollard and ended when appellant and Kotera fled and returned
to the apartment. The second, the confrontation in the parking lot, was begun when appellant and
Kotera armed themselves, left the apartment, and went to the parking lot to confront Pollard. The
use of deadly force is not justified if a reasonable person in the actor's situation would have
retreated. Tex. Pen. Code Ann. § 9.32(a)(2). Having successfully retreated and thereby ended the
initial confrontation, appellant cannot use Pollard's provocative conduct on the street to excuse or
justify his own decision to arm himself and provoke a second confrontation. 

Because there was evidence from which a rational trier of fact could conclude beyond
a reasonable doubt that appellant provoked the difficulty with Pollard, the district court did not err
by submitting the question of provocation to the jury. Point of error one is overruled.


Seeking an Explanation While Armed

The use of force against another in self-defense is not justified if the actor sought an
explanation from or discussion with the other person concerning the actor's differences with the
other person while the actor was unlawfully armed. Tex. Pen. Code Ann. § 9.31(b)(5). As with the
provocation issue, we view the evidence in the light most favorable to giving the instruction to
determine if there was sufficient evidence from which a rational trier of fact could have found (1)
that appellant sought an explanation from or discussion with Pollard and (2) that he was unlawfully
carrying a handgun. Baumguardner v. State, 963 S.W.2d 171, 175 (Tex. App.--Waco 1998, pet.
ref'd).

Appellant urges that there is no evidence that he sought out Pollard for the purpose
of seeking an explanation or discussion of their differences. We disagree. A rational jury could infer
from the circumstantial evidence that appellant left the apartment and went downstairs to look for
Pollard precisely for that purpose.

Appellant further argues that there is no evidence that he was unlawfully armed. A
person commits an offense if he intentionally carries a handgun on his person. Tex. Pen. Code Ann.
§ 46.02 (West Supp. 2003). It is a defense to prosecution under section 46.02 that the defendant was
carrying the handgun at his residence. See Inzer v. State, 601 S.W.2d 367, 368 (Tex. Crim. App.
1980). Appellant contends that the apartment was his residence, and therefore he was not unlawfully
carrying a handgun when he confronted Pollard in the parking lot.

Kotera testified that appellant had been living with him and Wells for about two
weeks before the shooting. In his written statement to the police, however, Kotera repeatedly
referred to the apartment as "my apartment" and never said that appellant was living there. In his
own statement to the police, appellant did not claim to be living in the apartment, which he referred
to several times as "Steven's apartment." Kotera and Wells were the only persons named on the
apartment lease. Another resident of the complex who was acquainted with Kotera and Wells
testified that he never saw anyone else living in their apartment. Given this conflicting evidence, the
jury could rationally conclude that appellant was not a resident of the apartment.

Because there was evidence from which a rational trier of fact could conclude beyond
a reasonable doubt that appellant sought an explanation from or discussion with Pollard while
unlawfully carrying a handgun, the district court did not err by submitting this issue to the jury. 
Points of error two and three are overruled.


The judgment of conviction is affirmed.



 __________________________________________

 Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Yeakel

Affirmed

Filed: January 16, 2003

Publish
1. This summary of the evidence is based primarily on Kotera's testimony and on Kotera's and
appellant's written statements to the police, which were introduced in evidence.
2. We will address this question more fully in our discussion of points of error two and three. 
3. Kotera and appellant are white. Pollard was black.
4. Kuharchek did not identify appellant and Pollard, but it is undisputed that they were the persons
he saw.