Opinion issued December 18, 2008
















In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00207-CR

__________


EDWARD JEVAN ERVIN, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 177th District Court

Harris County, Texas

Trial Court Cause No. 1137688






MEMORANDUM OPINION

 A jury found appellant, Edward Jevan Ervin, guilty of the offense of murder. (1) 
After finding true the allegation in one enhancement paragraph that appellant had a
prior felony conviction, the jury assessed his punishment at confinement for forty-five
years. In his first and second points of error, appellant contends that the trial court
erred in qualifying its jury instructions on his claim of self defense and in overruling
his objection to the State's jury argument that "misstated the law on self-defense
contrary to the [trial] court's charge." In his third point of error, appellant contends
that his trial counsel provided ineffective assistance by not seeking a mitigation
instruction on sudden passion during the punishment phase of trial. 

 We affirm. Factual Background Jesse May Blanks testified that, on December 2, 2006, she was washing her car
outside an apartment complex when she saw appellant and the complainant, Terrance
Moses, walk past her. After returning to her friend's apartment, she heard six
gunshots and then sounds indicating that someone was falling down some exterior
stairs at the apartment complex. She immediately ran outside of her friend's
apartment and saw appellant standing on one of the common stairways or breeze ways
of the apartment complex holding a gun. After appellant turned and ran down a set
of exterior stairs at the apartment complex, Blanks also ran down a set of stairs and
saw the complainant, with blood on his shirt, lying on the ground at the bottom of one
of the sets of stairs. Blanks did not see a weapon on the complainant. 

 Douglas Wayne Galvan, an employee and resident at the apartment complex,
testified that appellant lived in an apartment across from his. Galvan was standing
outside of his apartment when he saw the complainant and appellant walking toward
appellant's apartment. Galvan, who heard the complainant tell appellant that he
wanted his money, could tell there was a problem. Galvan saw appellant let the
complainant into appellant's apartment, but appellant never went inside his
apartment. Galvan then heard the complainant tell appellant that he did not want a
television. After the complainant left appellant's apartment and both men walked
away from the apartment, the complainant told appellant, "It's going to be you or
me." Appellant then said, "It won't be me," and he shot the complainant. The
complainant staggered away, appellant shot the complainant again, and the
complainant rolled down some stairs at the apartment complex. Galvan never saw the
complainant with a gun and did not hear the complainant say anything about a gun. 
On cross-examination, Galvan agreed that, in his statement to police officers, he had
previously stated that he had heard the complainant tell appellant, "When I get back,
either you or me is going to die." Appellant then told the complainant, "You won't
make it back." Galvan stated that, at the time of the shooting, the complainant was
leaving the apartment complex.

 Kendra McCarty, an apartment tenant, testified that she heard the complainant
tell appellant that when he came back, appellant better have the complainant's money. 
McCarty then heard gunshots and saw appellant, who was holding a gun, run down
the apartment complex stairs and get into a car. McCarty then saw that the
complainant had been shot. She did not see a gun on the complainant. 

 Andre Gilliam, the complainant's friend, testified that he was riding with the
complainant in the complainant's car on the morning of the shooting, and, after the
complainant had received a telephone call, he and the complainant drove to the
apartment complex where appellant lived. Gilliam explained that the complainant
had told him that a friend who owed him some money told him to meet him at the
apartment complex. When the complainant and appellant saw each other, they got
out of their cars and walked toward the apartments together. Gilliam did not see the
complainant with a gun. Two to three minutes later, Gilliam heard gun shots, and,
after jumping out of his car, he saw appellant, who was holding a gun, run and jump
into a car. After Gilliam found the complainant lying on the ground, he checked on
him and ran back to his car. At that point, another car approached Gilliam, and
someone in the car fired a gun at him. 

 Cedric Barnett, who was also at the apartment complex, saw appellant and the
complainant arrive at the complex. After he heard gunshots, Barnett ran to the
apartment complex's breeze way and saw the complainant on the ground. The
complainant did not have a weapon on him. Barnett then saw appellant run down the
apartment stairs and jump into a car.

 Dr. Valerie Green of the Harris County Medical Examiners Office testified that 
she examined the complainant's body and determined that he died of multiple
gunshot wounds. The complainant had been shot at least five times in his back and
once in his side. 

 Robert Duvall, appellant's friend, testified that he met appellant on the morning
of the shooting at an area referred to as Market Street. Duvall explained that
appellant was nervous and, when the complainant pulled up in a car, the complainant
was upset and had a gun sitting on his lap. After leaving Market Street, the
complainant called appellant's cellular telephone. Appellant then got into his car and
drove to the apartment complex. Duvall, who followed appellant to the complex,
heard gunshots, saw appellant running from the complex, and saw the complainant
on the ground. Duvall then saw a man named "Dre" grab what appeared to be a gun
from the complainant's body. Duvall explained that appellant was frightened of the
complainant. 

 Appellant testified that, on the day before the shooting, the complainant had
given him three pounds of marijuana to sell, but someone had broken into his house
and stolen it. When appellant called the complainant to explain what had happened,
the complainant became angry and told appellant that he wanted his money and, if
appellant did not have the money, the complainant was "going to down" appellant. 
Appellant explained that he was frightened because this meant that the complainant
was going to kill him. After some additional telephone calls, the complainant met
appellant at Market Street and told appellant that something was going to happen if
he did not get his money. Although appellant did not see a weapon on the
complainant while at Market Street, he felt threatened and "shook and shivered." 
After the complainant left Market Street, he called appellant on his cellular telephone
and told appellant to let him search his apartment. Appellant feared for the safety of
his family at the apartment and arranged for his family to leave the apartment. 
Appellant then met the complainant at the apartment to show him that he did not have
the marijuana. At one point in his testimony, appellant agreed that it was he who had
suggested going to the apartment.

 Appellant, who had been carrying a gun since he had first spoken with the
complainant at Market Street, brought the gun, which had been cocked by his brother,
to the apartment complex to protect himself. When appellant and the complainant
walked up a set of exterior stairs at the apartment complex, the complainant told
appellant that he was carrying a gun. Appellant let the complainant into his
apartment, but appellant did not go inside. As the complainant looked through the 
apartment, he told appellant that he was going to "down him" if he did not get his
money. The complainant then left the apartment, and as the men walked down to the
end of the balcony on the breeze way, the complainant continued to make threats. 
Appellant had previously offered the complainant $400, and, when appellant told the
complainant that he could get the money from his brother quickly, the complainant
"looked at [appellant] with a funny look . . . like something was fixing to happen." 
After appellant told the complainant not to do what he was about to do, the
complainant reached for his gun and grabbed it. Appellant then grabbed his gun and
fired it at the complainant. Appellant heard four shots and ran away. Appellant
explained that he thought that the complainant was going to kill him. Appellant
agreed that after he had fired his gun, the complainant turned around and ran away,
but appellant continued to fire his gun. The last thing that appellant could remember
was running down the stairs and, after that, "everything kind of blanked" until he got
to his mother's house. 

Jury Charge on Self Defense

 In his first point of error, appellant argues that the trial court erred in qualifying
its jury instruction on his claim of self defense by further instructing the jury that his
use of force was not justified if he sought an explanation from the complainant while
armed and in violation of the law because no evidence showed that appellant sought
out the complainant for such an explanation. 

 We must first determine whether error actually exists in the charge. Ngo v.
State, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005); Abdnor v. State, 871 S.W.2d
726, 731-32 (Tex. Crim. App. 1994). Appellant complains of the following
instruction: 

 You are further instructed as part of the law of this case, and as a
qualification of the law on self-defense, that the use of force by a
defendant against another is not justified if the defendant sought an
explanation from or discussion with the other person concerning the
defendant's differences with the other person while the defendant was
carrying a weapon in violation of the law.


 A person commits an offense if he intentionally, knowingly, or
recklessly carries on or about his person a handgun. 


Section 9.31(b)(5) of the Texas Penal Code, the basis for the above instruction,
provides, 

(b) The use of force against another is not justified:

 

 (5) if the actor sought an explanation from or discussion
with the other person concerning the actor's
differences with the other person while the actor
was:


 (A) carrying a weapon in violation of
Section 46.02; . . . .


Tex. Penal Code Ann. § 9.31(b)(5)(A) (Vernon Supp. 2008). Section 46.02(a) of
the Penal Code provides,

(a) A person commits an offense if the person intentionally,
knowingly, or recklessly carries on or about his or her person a
handgun, illegal knife, or club if the person is not:


 (1) on the person's own premises or premises under the
person's control; or


 (2) inside of or directly en route to a motor vehicle that
is owned by the person or under the person's
control.


Id. § 46.02(a) (Vernon Supp. 2008).

 A charge under section 9.31(b)(5)(A) is properly given when self-defense is
an issue and there are facts in evidence that show that a defendant sought an
explanation from or discussion with the other person and that the defendant was
unlawfully carrying a handgun. See Lee v. State, 259 S.W.3d 785, 789 (Tex.
App.--Houston [1st Dist.] 2007, pet. ref'd); Fink v. State, 97 S.W.3d 739, 743 (Tex.
App.--Austin 2003, pet. ref'd); Bumguardner v. State, 963 S.W.2d 171, 175 (Tex.
App.--Waco 1998, pet. ref'd). 

 Here, although appellant contends that "[i]t is undisputed that the complainant
himself sought out appellant on the day of the shooting" and that "no witness testified
that appellant sought out the complainant," appellant himself testified during his
cross-examination that he was the person who suggested going to the apartment
complex so that he could show the complainant that the complainant's marijuana had
in fact been stolen as well as to reiterate his offer to pay the complainant for the
stolen marijuana. Moreover, Gilliam, the complainant's friend, testified that the
complainant had received a telephone call and, after this telephone call, he and the
complainant drove to the apartment complex where appellant lived. When the
complainant and appellant saw each other, they got out of their cars and walked
toward appellant's apartment. We conclude that there is sufficient evidence from
which a rational trier of fact could find that appellant sought an explanation from or
discussion with the complainant regarding the marijuana and the money that appellant
owed to the complainant to support the instruction provided pursuant to section
9.31(b)(5)(A).

 Alternatively, appellant argues that, even if the instruction was appropriate, 
"the limiting instructions were incomplete and erroneous by failing to include the
language of [section] 46.02 which sets out the premises defense." See Tex. Penal
Code Ann. § 46.02(a)(1). 

 Appellant admits that he was carrying a gun while at Market Street on the
morning of the shooting. Although there was conflicting evidence as to whether
appellant or the complainant sought out the other to discuss the missing marijuana,
it is undisputed that appellant was carrying a cocked gun when he arrived at his
apartment complex to meet with the complainant. It is also undisputed that, although
appellant let the complainant into his apartment to look for the missing marijuana,
appellant never entered his apartment and instead waited outside his apartment's door
on the apartment complex's common breeze way or balcony area. After the
complainant finished searching appellant's apartment, both men walked down the
apartment complex's second story breeze way toward one of the apartment complex's
common stairwells. In this common area, appellant shot the complainant, and the
complainant fell down the stairs in view of or proximity to a number of other tenants
at the apartment complex. We conclude that there is no evidence to support a finding
that, at the time of the shooting, appellant was on his own premises or premises under
his control to justify the instruction requested by appellant. See Bryant v. State, 508
S.W.2d 103, 103-04 (Tex. Crim. App. 1974) (affirming conviction for unlawfully
carrying a pistol based upon evidence that defendant possessed pistol in apartment
complex parking lot shared by other tenants); Wilson v. State, 418 S.W.2d 687, 688
(Tex. Crim. App. 1967) (stating that "[w]e are unable to agree that a tenant who
carries a pistol upon the grass, sidewalks, driveway, and parking lot jointly used by
all tenants of a large apartment complex, such as the one described herein, is on
'one's own premises,' within the meaning of the statute"); see also Curlin v. State,
Nos. 05-97-02225-CR & 05-97-02226-CR, 2000 WL 387616, at *3 (Tex.
App.--Dallas Apr. 18, 2000, no pet.) (not designated for publication) (stating that
"felon who lives in an apartment may not possess a firearm in the 'common areas' of
his apartment complex" and affirming conviction of defendant who possessed
"firearm outside his front door at his apartment complex" because it was a "'common
area' accessible to all tenants").

 Having concluded that there is sufficient evidence for a rational trier of fact to
find that appellant sought an explanation or discussion with the complainant
regarding the marijuana and the money that appellant owed to the complainant and
that there is no evidence that appellant was on his own premises or premises under
his control at the time of the shooting, we hold that the trial court did not err in
instructing the jury in accordance with section 9.31 of the Penal Code.

 We overrule appellant's first point of error.

Jury Argument

 In his second point of error, appellant argues that the trial court erred in 
overruling his objection to the State's jury argument that the jury should not view the
evidence from his perspective because the State "misstated the law on self-defense
contrary to the [trial] court's charge." Appellant complains of the State's comments
made in the following exchange:

 [State]: So under the law of the State of Texas, he doesn't
even get self-defense. But let's talk about it anyway,
because it's been discussed and it's in the charge,
and let's talk about all the reasons why his actions
that day weren't reasonable. For one thing, in order
to believe that he was lawfully using self-defense,
you have to believe what this man told you, him and
his friends, otherwise, there is nothing there. You
have to believe that he saw [the complainant] with a
gun and that [the complainant] threatened to
immediately harm him to the point where he thought
he needed to shoot him seven times. And it's not
from his perspective, you put yourself in his shoes
and you look at it as a reasonable person would
look at the situation.


 [Appellant]: Objection, Judge, misquoting the instructions.


 [Trial Court]: Overruled. Just refer to the charge.


 [State]: You look at it as a reasonable person, an ordinary
person would look at the situation in making a
decision as to whether or not they needed to protect
themselves with deadly force. It's not whatever
crazy thoughts he was having, it's what a reasonable
person would do. Appellant asserts that the State erroneously argued that the jury "should view
the reasonableness of [his] actions other than solely from [his] standpoint." The State
counters that it properly informed the jury "that appellant's own subjective
perspective was not the basis for determining whether his use of self defense was
reasonable." The State asserts that the comments were entirely consistent with the
jury instructions, which provided, among other things, that "a person is justified in
using force against another when and to the degree he reasonably believes the force
is immediately necessary"; "the term reasonable belief" means a belief "held by an
ordinary and prudent person in the same circumstances as the defendant"; the law
justifies deadly force by a person to the degree that he "reasonably believes
immediately necessary, viewed from his standpoint at the time"; and "you should
place yourselves in the defendant's position at that time" and view the circumstances
"from his standpoint alone."

 We conclude that the State's jury argument was consistent with the trial court's
instructions, which appellant concedes were proper. The State made clear to the
jurors that they were to put themselves in appellant's shoes, but that they were also
to look at the situation as a reasonable person would. This argument was consistent
with the trial court's instructions that, although the jury was to view the
circumstances from appellant's "standpoint alone," the jury also had to consider
whether appellant held a reasonable belief that deadly force was necessary. 
Accordingly, we hold that the trial court did not err in permitting the State's jury
argument on the ground that it was inconsistent with the trial court's charge.

 We overrule appellant's second point of error.

Ineffective Assistance

 In his third point of error, appellant argues that because the evidence raised an
issue as to whether he caused the death of the complainant under the immediate
influence of sudden passion arising from adequate cause, his trial counsel provided
ineffective assistance by failing to seek a mitigation instruction on sudden passion
during the punishment phase of trial. 

 In order to prove an ineffective assistance of counsel claim, a defendant must
show that his counsel's performance fell below an objective standard of
reasonableness and, but for his counsel's unprofessional error, there is a reasonable
probability that the result of the proceedings would have been different. Strickland
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Vasquez v. State,
830 S.W.2d 948, 949 (Tex. Crim. App. 1992). A reasonable probability is a
"probability sufficient to undermine confidence in the outcome." Strickland, 466
U.S. at 694, 104 S. Ct. at 2068. In reviewing counsel's performance, we look to the
totality of the representation to determine the effectiveness of counsel, indulging a
strong presumption that his performance falls within the wide range of reasonable
professional assistance or trial strategy. Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999). Furthermore, a claim of ineffective assistance must be firmly
supported in the record. Id.

 Murder is a first-degree felony. Tex. Penal Code Ann. § 19.02(c) (Vernon
2003). However, during a trial's punishment phase, a defendant may attempt to
mitigate his punishment by raising the issue as to whether "he caused the death under
the immediate influence of sudden passion arising from an adequate cause. If the
defendant proves the issue in the affirmative by a preponderance of the evidence, the
offense is a felony of the second degree." Id. § 19.02(d) (Vernon 2003). "Sudden
passion" is "passion directly caused by and arising out of provocation by the
individual killed or another acting with the person killed which passion arises at the
time of the offense and is not solely the result of former provocation." Id.
§ 19.02(a)(2) (Vernon 2003). "Adequate cause" is "cause that would commonly
produce a degree of anger, rage, resentment, or terror in a person of ordinary temper,
sufficient to render the mind incapable of cool reflection." Id. § 19.02(a)(1) (Vernon
2003). 

 In the punishment phase of trial, "a sudden passion charge should be given if
there is some evidence to support it, even if that evidence is weak, impeached,
contradicted, or unbelievable." Trevino v. State, 100 S.W.3d 232, 238 (Tex. Crim.
App. 2003). However, the evidence "cannot be so weak, contested, or incredible that
it could not support such a finding by a rational jury." McKinney v. State, 179
S.W.3d 565, 569 (Tex. Crim. App. 2005). Moreover, "[a] defendant may not rely
upon a cause of his own making, such as precipitating a confrontation, as an adequate
cause." Noland v. State, 264 S.W.3d 144, 149 (Tex. App.--Houston [1st Dist.] 2007,
pet. ref'd) (citation omitted).

 In support of a sudden passion instruction, appellant cites his testimony that,
after his first encounter with the complainant on Market Street, he was frightened and
"shook and shivered." Appellant further cites his testimony that after the shooting,
the last thing he could remember was running down the stairs, everything "kind of
blanked" to him, and he was scared, panicked, and shocked. Moreover, appellant
emphasizes that he could tell that the complainant was armed, the complainant had
threatened to "down him," and the complainant had "grabbed his gun and moved
toward" him while they were at the apartment complex. 

 Here, however, appellant did not file a new trial motion, and the record does
not reveal why appellant's trial counsel did not request a sudden passion instruction. 
It is clear from the trial court transcript that the focus of appellant's case was his
claim of self-defense, which the jury rejected. The evidence cited by appellant in
support of a sudden passion instruction generally relates to this claim of self-defense. 
Moreover, it is undisputed that appellant left Market Street to meet the complainant
at his apartment and that appellant carried a cocked gun with him to the apartment. 
This evidence would not support a sudden passion instruction because it relates only
to former provocation. Appellant's testimony that, after the shooting, he was scared,
panicked, and "blanked," also provides no support for a sudden passion instruction
as it does not relate to the time of the offense. Although appellant did testify that the
complainant threatened to "down him," we cannot say, on this record, that appellant's
trial counsel provided ineffective assistance by not seeking an instruction on sudden
passion. See Mitchell v. State, 191 S.W.3d 219, 224-25 (Tex. App.--San Antonio
2005, pet. ref'd) (citing Trevino, 100 S.W.3d at 239) (holding that mere fact that
defendant acted in response to victim's provocation was not sufficient to warrant
charge on sudden passion). Appellant's trial counsel may have believed that
insufficient evidence supported such an instruction or that, if the jury rejected
appellant's claim of self defense, they would also necessarily reject any claim of
sudden passion.

 We conclude that appellant has not demonstrated that any acts or omissions of
his trial counsel fell below an objective standard of reasonableness. Accordingly, we
hold that appellant has not satisfied Strickland's first prong.

 We overrule appellant's third point of error.






Conclusion

 We affirm the judgment of the trial court.


 

 Terry Jennings

 Justice


Panel consists of Justices Jennings, Hanks, and Bland.


Do not publish. See Tex. R. App. P. 47.2(b).

1. See Tex. Penal Code Ann. § 19.02(b) (Vernon 2003).