Opinion issued October 29, 2009









 








In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00411-CR






DOMINIQUE ANTHONY DORSEY, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 230th District Court

Harris County, Texas

Trial Court Cause No. 1122318








MEMORANDUM OPINION


 Appellant, Dominique Anthony Dorsey, appeals from a conviction for the
murder of Eric Deshun Jones. See Tex. Penal Code Ann. § 19.02 (Vernon 2003). 
Appellant pleaded not guilty to the jury. The jury found appellant guilty and
sentenced him to 10 years in prison. In his sole issue, appellant contends the trial
court erred by instructing the jury that a person who provokes a difficulty cannot be
found to have acted in self-defense. Act of May 15, 1995, 74th Leg., R.S., ch. 190,
§ 1, 1995 Tex. Gen. Laws (amended 2007) (current version at Tex. Penal Code
Ann. § 9.31(b)(4) (Vernon Supp. 2009)). We conclude the trial court properly
included the provocation instruction and therefore affirm.Background In June 2007, Johnny Thibodeaux and his girlfriend, Krystle Butler, were
sitting outside of their apartment with their friend, the complainant Eric Deshun
Jones. The group heard appellant arguing with his girlfriend, Khierra Walker. 
Walker yelled, "Do ya'll hear this?" in the direction of Jones and his friends, in
reference to the fight she was having with appellant.

 One or two days after witnessing the argument, Jones and Thibodeaux were
again sitting outside of Thibodeaux's apartment. Walker, who was visibly pregnant,
walked past them. When Jones told Walker he did not want to get involved with
arguments between Walker and appellant, Jones and Walker began exchanging
unfriendly words. After Thibodeaux told Jones to let it go, the two men went upstairs
to Jones's apartment.

 Walker called appellant, who was her boyfriend and the father of the child. 
Walker told appellant that she was upset and afraid because of the altercation. 
Appellant told her to remain inside until he could get off work. When appellant
returned home a few hours later, Thibodeaux and his girlfriend heard a loud
conversation outside between appellant and Walker. Appellant and Walker knocked
on Thibodeaux's apartment door a short time later. When Thibodeaux opened the
door he found appellant holding a long gun partially hidden under a t-shirt and
pointed at Thibodeaux. Thibodeaux sent his girlfriend into the bedroom to get away
from appellant. Appellant demanded to know what Thibodeaux said to Walker. 
Thibodeaux denied that he had been the one to exchange words with Walker.

 After Walker confirmed Thibodeaux's story, appellant and Walker walked to
Jones's apartment building. Walker remained at the bottom of the stairs while
appellant walked up to Jones's apartment on the third floor. Thibodeaux attempted
to call Jones to warn him that appellant was coming upstairs with a gun but was
unsuccessful.

 Standing outside of the already open door, appellant questioned Jones about
what Jones had said to Walker. The loud voices awoke Jones's wife, Corine Brown,
who was sleeping in the bedroom. She entered the living room just as Jones began
to get up from the sofa to speak to appellant in the doorway. A few moments later,
Brown walked up behind Jones so she could close the front door. After Brown shut
the door, Jones told Brown to go to her room. A few moments later Brown heard the
front door open, followed by a large boom. Brown saw her husband through the front
door as he pulled himself back up after falling close to the stairs. Jones died before
police arrived.

 A houseguest of Jones and Brown told responding police officers that he saw
appellant holding a gun and then he saw Jones retrieve his own gun from the living
room. Although the houseguest did not testify, the statement was admitted through
a police officer's testimony at trial. The houseguest did not, however, witness the
shooting.

 Evidence at the scene indicated Jones was shot close to the front door of his
apartment but not inside the apartment. The blood at the scene indicated Jones
walked away from his apartment after being shot, before collapsing down the hall
from where the shooting had taken place. When the police arrived, they found a
shotgun belonging to Jones lying next to his body. Police recovered a small handgun
inside Jones's apartment.

 After the shooting, appellant and Walker locked up their apartment and
immediately fled the area. Police conducted a search of appellant's apartment,
recovering drugs, the butt of a rifle, and 12-gauge and 20-gauge shotgun shells. 

 Police located appellant and Walker after receiving a tip a few days later. 
Appellant gave a recorded confession to the police in which he admitted that he had
shot complainant but claiming he did so in self-defense. Walker also gave a recorded
statement, initially denying appellant had a gun but later admitting that appellant did
have a weapon. Walker was unable to see the shooting from her location at the
bottom of the stairs. Walker testified that Thibodeaux and Jones were smoking PCP
at the time that she and Jones had their altercation. Results from the autopsy showed
PCP in Jones's system at the time of his death, but it was not possible to determine
exactly at what time he had either smoked or ingested the drug. 

 Brown reported that she did not see Jones holding the gun when she last saw
him inside the apartment. She could not say at what point Jones picked up the gun
because she went back into the bedroom.

 Officers who testified at trial said the evidence found at the scene did not
support appellant's self-defense story. The physical evidence at the scene did not
match the positions appellant claimed both parties were in during the altercation. 
According to appellant, he was 10 to 16 feet from Jones at the time of the shooting. 
At that range, if appellant had used the short barrel gun as he claimed, the pattern of
wounds on Jones would have been much more spread out. Additionally, one officer
testified the blood splatter and wounds indicated the men were about a foot and a half
apart. The doctor who performed the autopsy testified that Jones and appellant were
about four to five feet apart at the time of the incident.

 At trial, both appellant and Walker testified for the defense. Walker said the
words exchanged between Jones and herself resulted in threats by Jones that he would 
use a gun against Walker. Appellant admitted he did take his gun with him to
question Jones because he felt he needed protection as he went to find what actually
happened by speaking to Jones. Contrary to testimony given by Thibodeaux and
Butler, appellant stated that he was not looking for Thibodeaux, did not knock on
Thibodeaux's door, and did not point a gun at anyone. Appellant said it was
Thibodeaux who initiated contact when he saw appellant and Walker walking outside. 
Once it was established that Thibodeaux had not been the one to threaten Walker,
appellant went to the third floor of Jones's building while Walker remained at the
bottom of the stairs. Appellant put his gun down on the stairs before he went to
Jones's front door. The front door was open and Jones was sitting on the sofa. 
Appellant and Jones had "kind of an argument," and Jones pointed a gun at appellant. 
The conversation ended when Brown reached around Jones and closed the front door. 
Appellant turned away to pick up his gun but did not make an effort to run, even
though he claimed he was afraid Jones would shoot through the door. Appellant
avoided using the stairway by Jones's door because Walker was at the bottom of the
stairs, and appellant did not want her harmed if Jones began to shoot. Appellant
heard a shotgun click behind him. Appellant turned around to see Jones approaching
with a shotgun positioned towards appellant. Jones slapped appellant with his left
hand before stepping back. Before shooting Jones in self-defense, appellant stated,
"Please don't shoot me." In earlier testimony and on his recorded confession,
appellant did not claim to have said anything prior to the shooting, but rather
appellant said he just stood there before shooting Jones.

 Appellant testified that he had two shots remaining in his gun but chose not to
use them, even though he did not know if he had shot Jones. When the smoke from
the shot cleared, appellant said he saw Jones coming towards him. Appellant ran
because he was afraid that Jones would still attack. Appellant dropped his gun as he
ran down the stairs, and the gun was never recovered. Appellant stated he did not
intentionally shoot Jones but shot him accidentally. He also testified he shot Jones
due to fear of imminent bodily injury or death. Appellant and Walker spent the next
few nights in hotels but did not speak to the police even though appellant received a
message from the police through his mother. Appellant was arrested at a friend's
house a couple of days later.

 Another witness for the defense, Kendall Alexander, testified that he heard
someone say, "Don't shoot me," and "Don't hit me," prior to the gunshot. He was
unable to identify the speaker. Walker testified that she heard appellant say those
words prior to the shooting. 

 The jury charge allowed the jury to acquit appellant if it believed he reasonably
used deadly force to defend himself against Jones's threat or use of deadly force. The
trial court included the provocation charge limiting the use of deadly force. The
charge stated "The use of force against another is not justified if the defendant
provoked the other's use of unlawful force[.]" Appellant's attorney objected to the
provocation charge in a timely manner. 


The Provocation Jury Charge

 In his sole issue, appellant contends the trial court erred by overruling his
objection to the jury charge on provocation. Appellant asserts the court improperly
included a provocation instruction because no evidence showed appellant provoked
the difficulty.

 A. Applicable Law

 When reviewing charge errors, an appellate court must first determine whether
error actually exists in the charge. Olivas v. State, 202 S.W.3d 137, 143-44 (Tex.
Crim. App. 2006); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984).
Only if the court finds error do we proceed to the second step that requires
examination of harm resulting from the error. Olivas, 202 S.W.3d at 143-44; 
Almanza, 686 S.W.2d at 171.

 The Texas Penal Code provides that a person is justified in using deadly force
due to a reasonable belief that it was immediately necessary to protect himself from
another's use of deadly force, and a reasonable person in his place would not have
retreated. See Tex. Penal Code Ann. §§ 9.31(a), 9.32(a) (Vernon Supp. 2009). An
exception to self-defense applies when the defendant provoked the difficulty. Id.
§ 9.31(b)(4). The Penal Code states, "The use of force against another is not justified
. . . if the actor provoked the other's use or attempted use of the unlawful force . . . ." 
Id.

 The trial court properly instructs the jury on the law of provocation when there
is sufficient evidence for a rational jury to find beyond a reasonable doubt:

 (1) that the defendant did some act or used some words which provoked
the attack on him, (2) that such act or words were reasonably calculated
to provoke the attack, and (3) that the act was done or the words were
used for the purpose and with the intent that the defendant would have
a pretext for inflict harm upon the other.


Smith v. State, 965 S.W.2d 509, 513 (Tex. Crim. App. 1998). On review, the
evidence to support the provocation instruction should be viewed in a light that is
most favorable to giving the instruction. Id. at 514. Circumstantial evidence can be
used to prove all three of the elements. Id. at 515, 517-18. 

 B. Analysis

 Viewing all of the evidence in a light most favorable to giving the instruction,
the record shows (1) appellant did some act or used some words that provoked
Jones's attack on him; (2) appellant's acts or words were reasonably calculated to
provoke the attack; (3) and appellant's acts or words were used for the purpose and
with the intent that appellant would have a pretext to harm Jones. 


 1. Provocation

 First, the jury must be able to find that the defendant did some act or used some
words which provoked the attack on him. "[I]f a rational jury could find beyond a
reasonable doubt that some act or words of the defendant actually caused the attack
on him, then this part of the inquiry is satisfied." Id. at 514.

 In this case, appellant stood in Jones's doorway even though he was not invited
into the apartment. It is undisputed that appellant asked Jones, in a loud voice, what
Jones had said to appellant's pregnant girlfriend, and it is also undisputed that
appellant and Jones had "kind of an argument." Additionally, although appellant
denies that he brought the gun to the door, and Jones's wife does not recall seeing
appellant with a gun, a jury could infer from appellant's previous encounter with
Thibodeaux that appellant was holding a gun but that the gun was blocked from 
Brown's view. Moreover, the jury heard evidence that Jones's houseguest saw Jones
retrieve a gun from inside the apartment after Jones saw appellant holding a gun. 
Finally, appellant admitted that the gun was loaded and the safety feature was off and
that he shot Jones. Viewing the evidence in a light favorable to giving the instruction
the record is sufficient evidence to show appellant did some act or used some words
which provoked Jones's attack on appellant. See id., 965 S.W.2d at 515-16 (finding
appellant's participation in loud argument between victim and another person was
sufficient for jury to find provocation by appellant's actions and words). 

 2. Reasonableness

 Once it is determined that there were provoking acts or words, the
reasonableness of the act or words to provoke an attack must be considered. 
Circumstantial evidence can be sufficient for a jury to find beyond a reasonable doubt
that appellant's words or acts were "reasonably capable of causing an attack, or . . .
ha[d] a reasonable tendency to cause an attack." Id. at 517. "[T]he act or words
taken in conjunction with the relations of the parties and other circumstances
surrounding the difficulty can provide the basis for such a finding." Id. We therefore
examine (a) acts or words by appellant, (b) the relationship between appellant and
Jones, and (c) any other circumstances that show appellant's words or acts had a
reasonable tendency to cause Jones to attack appellant. 

 a. Acts or Words by Appellant

 As described more fully above, some evidence shows appellant was upset with
Jones due to comments made by Jones towards appellant's girlfriend. Appellant
armed himself to talk to Jones before going to Jones's apartment and argued with
Jones. Appellant testified that he brought the gun upstairs with him for protection.

 b. Relationship Between Parties

 The dispute between appellant and Jones arose from comments made hours
earlier by Jones to appellant's pregnant girlfriend. The record shows appellant and
Jones had not met prior to this confrontation, even though Jones had witnessed a fight
between appellant and Walker earlier in the week. A long-standing relationship
between parties is not necessary to find provocation. See Fink v. State, 97 S.W.3d
739, 742 (Tex. App.--Austin 2003, pet. ref'd) (holding provocation instructions were
appropriate even though appellant and victim had not met prior to confrontation
earlier on day of shooting). A reasonable jury could find appellant's desire to protect
his girlfriend from Jones to be a sufficient enough relationship for a provocation
instruction. See Kennedy v. State, 193 S.W.3d 645, 654-55 (Tex. App.--Fort Worth,
2006, pet. ref'd) (holding provocation instructions were warranted even though
appellant's disagreement with victim concerned victim's relationship to third person).

 c. Other Circumstances

 Brown and appellant testified that they each kept loaded guns in their homes. 
Walker stated that this was "a very bad area" and she was afraid. Appellant's words
and acts had a reasonable tendency to cause an attack because appellant went to
Jones's apartment armed with a gun and argued with Jones.

 3. Intent

 The last element to be considered is the intent to use the provocation as a
pretext for murder. There must be sufficient evidence that would allow a rational jury
to find appellant possessed an intent to provoke so he would have a pretext to kill
under a guise of self-defense. Without "intent that the act would have such an effect
as part of a larger plan of doing the victim harm, [the defendant] does not lose his
right to self-defense." Smith, 965 S.W.2d at 518. When determining intent, a jury
can consider the behavior of appellant during and after the crime, but the jury is also
free to consider acts occurring prior to the incident. Id.

 The evidence supports a finding of intent to use the provocation as a pretext for
murder. Appellant's behavior prior to arriving at Jones's home could allow a
reasonable jury to find intent to cause a pretext. Although appellant denies pointing
the gun at Thibodeaux, Thibodeaux testified that, in the moments prior to speaking
with Jones, appellant pointed a gun at Thibodeaux while asking the same question
appellant asked Jones prior to the shooting. This suggest appellant had the intent to
provoke Jones.

 An officer testified the houseguest told police that Jones retrieved his own gun
after appellant was seen with a gun at Jones's doorway. Evidence that appellant
brought the gun upstairs to the front of Jones's apartment, even though appellant
could have left it in his apartment or downstairs with Walker, is sufficient evidence
to show intent to use provocation as a pretext for murder. See Smith, 965 S.W.2d at
519 (to establish intent, jury was free to consider credibility and demeanor of
appellant at trial and arguments heard by appellant between victim and another person
prior to murder). Appellant admitted his gun was loaded and the safety feature was
turned off when he walked up the stairs. A jury could have reasonably determined
that if appellant had the gun for any purpose other than shooting there would not have
been the need to have loaded the gun and turned the safety off.

 Viewing the evidence in a light most favorable to giving the instruction,
appellant's actions prior to the crime could allow a reasonable jury to conclude
beyond a reasonable doubt that there was an intent to provoke the difficulty with
Jones as a pretext to kill Jones. See Fink, 97 S.W.3d at 742 (finding appellant's
possession of a gun when seeking out complainant, following an earlier argument,
combined with appellant's fight with complainant that followed, were sufficient to
show intent to create pretext).

 We conclude that the trial court properly instructed the jury on the law of

provocation as a limitation to self-defense. Viewing the evidence in a light most
favorable to giving the instruction, there was sufficient evidence for a jury to find the
necessary elements of provocation beyond a reasonable doubt. See Smith, 965
S.W.2d at 516-19. We hold that the trial court did not err by instructing the jury that
it should find against appellant on his claim deadly force in defense of self if it found
beyond a reasonable doubt that appellant provoked the difficulty. 

 We overrule appellant's sole issue.

Conclusion

 We affirm the conviction for murder.



 Elsa Alcala

 Justice


Panel consists of Justices Keyes, Alcala, and Hanks.


Do not publish. Tex. R. App. P. 47.2(b).