**AFFIRMED and Opinion Filed July 24, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-18-01289-CR

**JORDAN TYREL BALLARD, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 15th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 068586**

# MEMORANDUM OPINION

Before Justices Whitehill, Partida-Kipness, and Pedersen, III
Opinion by Justice Whitehill

A jury convicted appellant of murder and aggravated assault with a deadly weapon and the trial court assessed punishment, enhanced by a prior conviction, at sixty years imprisonment.

In two issues, appellant argues that (i) the State committed a *Brady* violation because he was not provided with a log of persons at the crime scene and (ii) the jury charge was erroneous because it included a self-defense limiting instruction.

As discussed below, we conclude there was no *Brady* violation because appellant did not establish that the State possessed and did not disclose the complained-of list or that the list was material and favorable to appellant.[1] We further conclude that the jury charge was not erroneous because the evidence supported including the self-defense limiting instruction. We thus affirm the trial court's judgment.

---

[1] *See Brady v. Maryland*, 373 U.S. 83, 87 (1963).

## I. BACKGROUND

Justyn and Victor Simmons, brothers, were playing dominoes one evening when their uncle called to tell them that their cousin, D'Vine, had been pistol-whipped. D'Vine was appellant's girlfriend.

When Victor called D'Vine, she told him that she was fine and not to come over. But her voice did not sound normal, as though "someone was watching over her."

Destiny Ortega drove Justyn and Victor to Dennison to check on D'Vine's welfare. Neither Justyn nor Victor were armed.

When they arrived, appellant came out of an alley and stood about three feet away from Justyn and Victor. When Justyn called appellant a "dumbass," appellant shot him. While Victor was treating his brother, appellant fired three more shots and then ran. Justyn died from a gunshot wound to his chest.

Appellant was indicted for murder and aggravated assault. But he previously had been convicted of a federal offense arising out of these facts. A transcript of appellant's testimony in the federal case was admitted into evidence in the present case.

The jury found appellant guilty of aggravated assault and murder. The trial court assessed punishment, enhanced, at sixty years imprisonment, with the sentence to run concurrently with the federal sentence, and entered judgment accordingly.

## II. Analysis

A. **First Issue: Did the State violate *Brady* by failing to turn over a crime scene list?**

No, because appellant has not shown that such a list still existed or would have been helpful or material if it did.

Appellant's first issue argues that the State violated his rights under *Brady v. Maryland*, 373 U.S. 83, 87 (1963) because the State failed to provide him with a handwritten log listing people who were present at the crime scene.[2]

In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.*; *see also Banks v. Dretke,* 540 U.S. 668, 691 (2004).

The three-pronged test to establish reversible error for a *Brady* violation requires that the defense establish: (i) the State failed to disclose evidence, regardless of the prosecution's good or bad faith; (ii) the withheld evidence is favorable to him; and (iii) the evidence is material, that is, that there is a reasonable probability that had the evidence been disclosed the outcome of the trial would have been different. *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011). A defendant who meets this test is entitled to a new trial. *See Hampton v. State,* 86 S.W.3d 603, 612 (Tex. Crim. App. 2002).

Under the first prong, an appellant must show that the State failed to disclose evidence "which had been known to the prosecution but unknown to the defense." *Ex Parte Miles*, 359 S.W.3d 647, 665 (Tex. Crim. App. 2012) ("the State" includes law enforcement connected to investigation and prosecution of case).

The second prong, favorable evidence, "is any evidence that, if disclosed and used effectively, may make a difference between conviction and acquittal and includes both exculpatory and impeachment evidence." *Harm v. State*, 183 S.W.3d 403, 408 (Tex. Crim. App. 2006).

---

[2] Although appellant phrased his complaint as a *Brady* issue, because the State no longer had the disputed evidence, the case is more properly characterized as a *Youngblood* complaint concerning the destruction of potentially useful evidence. *See Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999) (citing *Arizona v. Youngblood*, 488 U.S. 51 (1988)). But even had appellant raised *Youngblood* or we treated his argument as such a challenge, the result does not change because there is no indication that the evidence was destroyed in bad faith. *See Youngblood*, 488 U.S. at 57–58. Thus, we review the issue as presented.

Under the third prong, suppressed favorable evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceedings would have been different." *United States v. Bagley*, 473 U.S. 667, 692 (1985). But, "[t]he mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *Ex Parte Miles*, 359 S.W.3d at 666 (quoting *United States v. Agurs*, 427 U.S. 97, 109–10 (1976)). Rather, when evaluating whether the materiality standard is satisfied, the strength of the exculpatory evidence is balanced against the evidence supporting conviction. *Id.* An appellant must show that, "in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecutor made a timely disclosure." *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002).

Here, during a pretrial hearing, appellant referred to a video in which an investigating officer made a statement about starting a witness log. Appellant said that he had not been provided with a copy of that log. The prosecutor said he would check with the police to see if such a log or list existed.

Appellant requested the log again fourteen months later when the trial began and the prosecutor said that every piece of evidence in the State's possession had been turned over. The State had asked the police about the log and was told that any list that had existed was "typed up" and included in the police report which had been given to the defense.

Detective Kyle Mackay, the lead detective in the case, then testified that the "list" referenced by defense counsel was a record of who went in and out of the crime scene after the police arrived and was included in the police report at page five. Not all people at the crime scene would have been included on the list; it only included people entering the scene after the officer was directed to make a log. Mackay said that any handwritten notes would not have been preserved

after the information was memorialized in the report. According to Mackay, it was standard operating procedure for the police to destroy the note card or small piece of paper on which notes were made after the information was transcribed into clear, legible text.

The handwritten list was prepared by Amanda Stephens, a training officer who was no longer with the Dennison police department. The department was no longer in contact with Stephens. Defense counsel said he had not included Stephens on his witness list, but he would do so. The record does not reflect, however, that Stephens was ever subpoenaed to testify.

Regardless of whether counsel chose to cross-examine Stephens about the handwritten notes that once existed, appellant did not establish that the handwritten list still existed or that the State had the list and failed to turn it over to the defense.

Appellant also failed to establish that the handwritten list would have been helpful and material if it existed. Appellant does not argue that the list would have any bearing on his self-defense claim or that he would have modified his defense strategy in any way. Likewise, he does not explain how it is reasonably probable that timely disclosure of the handwritten list would have resulted in a different outcome at trial. Instead, he claims only that there may have been other witnesses on the list who were not interviewed by law enforcement or called to testify at trial. But the record reflects that the people that defense counsel thought should have been included on the typed list were known to him and referenced elsewhere in the report or the videos from the crime scene. And, as the trial judge noted, counsel was free to cross-examine Mackay about the people counsel believed were present at the scene but not included on the typed list. It is speculative to assume that any handwritten list would have included names not otherwise known to appellant to have been at the crime scene.

Thus, on this record, we conclude that appellant has failed to show that he was denied a fair trial because the State possessed exculpatory or mitigating evidence that it did not disclose.

*See Ex parte Reed*, 271 S.W.3d 698, 726–27 (Tex. Crim. App. 2008). We resolve appellant's first issue against him.

**B.**     **Second Issue: Was the jury charge's self-defense limiting instruction erroneous?**

Appellant's second issue argues that the trial court erroneously included a self-defense limitation in the jury charge. Specifically, appellant contends that there is no evidence that he "sought an explanation from or discussion with [Justyn] while [he] was carrying a weapon in violation of the law." *See* TEX. PENAL CODE § 9.31(b)(5).

The review of an alleged jury charge error in a criminal trial is a two-step process. *Abdnor v. State,* 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). First, we determine whether there was error in the jury charge. *Id.* Then, if there is charge error, we must determine whether there is sufficient harm to require reversal. *Id*. at 731–32. The standard for determining whether there is sufficient harm to require reversal depends on whether the appellant objected to the error at trial. *Id*. at 732.

In our review of the issue, we view the evidence in the light most favorable to giving the instruction to determine if there was sufficient evidence from which a rational trier of fact could have found (i) that appellant sought an explanation from or discussion with Justyn and (ii) that appellant was unlawfully carrying a handgun. *See Fink v. State*, 97 S.W.3d 739, 743 (Tex. App.— Austin 2003, pet. denied).

> Here, consistent with the penal code, the jury was instructed that:
>
> Under our law, a person is justified in using force against another when and to the degree that he reasonably believes the force is immediately necessary to protect himself against the other person's use or attempted use of unlawful force.
>
> The use of force against another is not justified in response to verbal provocation alone;
>
> The use of force against another is not justified if the actor consented to the exact force used or attempted by the other.

> The use of force against another is not justified if the actor sought an explanation from or discussion with the other person while the actor was carrying a weapon in violation of the law. . . .

*See* TEX. PENAL CODE § 9.31(b)(5). There is sufficient evidence to support this instruction.

Appellant admitted that he was not supposed to have a gun in his possession because he is a felon. The federal trial transcript included appellant's testimony about approaching the Simmons brothers that night because he "was curious as to know what was going on." When interviewed by the Dennison police, appellant said he first armed himself when he approached the brothers and said, "[s]o I come out and I see Justyn, and I'm like, what is going on? What is up"? He also told the Simmons brothers,"[y]a'll supposed to came down here to talk." Although appellant had his gun out, both Justyn and Victor were unarmed.

From this evidence, a rational trier of fact could conclude beyond a reasonable doubt that appellant sought an explanation or discussion from Justyn and Victor while unlawfully carrying a handgun. Therefore, the trial court did not err in giving the §9.31(b)(5) self-defense instruction to the jury. Appellant's second issue is resolved against him.

### III. CONCLUSION

Having resolved all of appellant's issues against him, we affirm the trial court's judgment.


/Bill Whitehill/
BILL WHITEHILL
JUSTICE


Do Not Publish
TEX. R. APP. P. 47
181289F.U05

–7–



## Court of Appeals
## Fifth District of Texas at Dallas
## JUDGMENT

JORDAN TYREL BALLARD, Appellant

No. 05-18-01289-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 15th Judicial District Court, Grayson County, Texas
Trial Court Cause No. 068586.
Opinion delivered by Justice Whitehill.
Justices Partida-Kipness and Pedersen, III participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered July 24, 2019